# STATE OF CONNECTICUT *v.* DUANE BANKS
## (AC 16825)

Schaller, Hennessy and Mihalakos, Js.

Argued January 27—officially released July 4, 2000

604

*Susan M. Hankins*, assistant public defender, with whom were *Pamela Chambers* and *Mena Juliet Bonnazoli*, certified legal interns, for the appellant (defendant).

*Robert M. Spector*, deputy assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Warren Maxwell*, senior assistant state's attorney, for the appellee (state).

*Opinion*

SCHALLER, J. The defendant, Duane Banks, appeals from the judgment of conviction, rendered after a jury trial, of robbery in the first degree in violation of General Statutes §§ 53a-134 (a) (4) and 53a-8, conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-48 (a) and 53a-134 (a) (4) and robbery in the third degree in violation of General Statutes §§ 53a-136 and 53a-136a.[1] On appeal, the defendant claims that the court improperly (1) admitted into evidence statements he made to the police, (2) admitted evidence of his prior convictions of robbery and larceny, and denied his request to try to the court the count alleging criminal possession of a pistol or revolver in violation of General Statutes § 53a-217c, (3) deprived him of a fair trial by allowing prosecutorial misconduct

---

[1] The jury found the defendant not guilty on the charges of larceny in the first degree, commission of a class B felony with a firearm and criminal possession of a pistol or revolver.

by the state during its closing argument and (4) denied him a fair trial by giving a supplemental instruction to the jury regarding physical items that were referred to by the prosecution but that were not admitted into evidence. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On April 13, 1995, at approximately 10:30 a.m., two masked men with silver handguns robbed a jewelry store located on Weston Street in Hartford. An individual named Cabbage Cole was the driver of the escape vehicle. As the vehicle was leaving the scene, it crashed into another vehicle at an intersection. Cole died from a gunshot wound to the chest that he had sustained during the robbery. The front seat passenger, who was masked, exited the vehicle, forced the operator of a red Ford Taurus that was in the immediate vicinity out of the car at gunpoint and fled in that vehicle.

The defendant was known to reside at the apartments of his girlfriend, Carolyn Edwards, located at 116 Brook Street, and his mother, located at 556 Blue Hills Avenue, both in Hartford. The Ford Taurus was found one block away from his mother's apartment shortly after the crime. Detective Robert Lawlor of the Hartford police department visited William King, who previously had participated in criminal activities with Cole, and saw the defendant in King's apartment.

On April 14, 1995, at 7:30 a.m., the police executed a search warrant at the home of the defendant's mother. They uncovered a pellet handgun in a room described as a junk room containing some of the defendant's clothes and personal belongings.

Subsequently, Lawlor and Detective Paul Sherokow, along with three Hartford police officers, went to Edwards' apartment, knocked on the door and announced that they were from the Hartford police department. Edwards opened the door, gave her con-

sent for the police to enter and stated that the defendant was not there. The defendant then appeared in a pair of boxer shorts. Both detectives were dressed in plain clothes and had their guns in holsters. Lawlor told the defendant that they believed he had been involved in an armed robbery that occurred the day before and asked the defendant if he would come to the police station for an interview. The defendant agreed. The defendant was allowed to return to his bedroom to change into his clothes. The officers accompanied him into his bedroom out of concern that he might secure a gun.

The officers were aware that the defendant had been convicted of a previous robbery and other crimes, and that he was an associate of Cole. Although the officers considered the defendant a strong suspect, they had not concluded that there was probable cause to arrest him in connection with the robbery of April 13. While he was still in the apartment, the defendant, not in response to any police questions, began to discuss the events of April 13. Lawlor immediately advised him to cease any such discussion, to remain silent and not to talk until he was at the police station.

At the police station, the defendant gave an oral statement confessing his participation in the crime and, shortly thereafter, was arrested. On May 15, 1995, the defendant, while an inmate at the Corrigan correctional institution, met with Lawlor and Sherokow, and made various changes to his prior statement. Subsequently, the defendant gave a third statement, in writing, when he again met with the police on May 25, 1995. On this occasion, the defendant's attorney was present. Additional facts will be set forth as necessary.

I

We first consider the defendant's claim that the court improperly denied his motion to suppress successive

oral and written statements made following his allegedly having been seized without probable cause. The defendant claims that the statements were involuntary and were the tainted product of his illegal arrest. We find this claim to be without merit.

The trial court reasonably could have found the following additional facts. On April 14, 1995, when Lawlor and Sherokow asked the defendant to come to the police station to talk, they did not place the defendant in restraints or handcuffs. He was taken to the police station in an unmarked police car, which did not have a divider between the front and back seats. Lawlor and Sherokow sat in the front seat of the car, and the defendant sat alone without restraints in the rear seat. The car's rear doors were not self-locking. The defendant did not ask if he could drive to the police station alone and entered the police car voluntarily.

At the police station, the defendant was provided with a muffin and coffee, and was allowed to walk around the office. The defendant had access to the bathroom and a telephone. Before the defendant gave his oral confession, the police did not consider him to be in custody or under arrest, and he was at liberty to leave the police station, to call an attorney or to return home at any time.

Before he made any statement, the defendant received his *Miranda*[2] rights and warnings. He signed the standard waiver of rights form, placing his initials on each of the five waiver paragraphs, before making any confession. The defendant thereafter gave an oral statement confessing to his participation in the crime. The defendant sat with Lawlor for nearly two hours in front of a word processor as he made his statement. The confession was then read, signed and sworn to by the defendant. During this two hour period, the defen-

---

[2] *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

dant was not restrained or shackled. The detective's gun remained out of sight in his desk.

On or about May 15, 1995, the defendant, while an inmate at the Corrigan correctional institution, initiated a call to Lawlor to clarify and modify his April 14, 1995 statement. Sometime later, Lawlor and Sherokow visited the defendant at the institution. The defendant expressed a desire to talk to the police, despite being represented by counsel. The defendant was again given his *Miranda* warnings and signed a waiver of those rights. The defendant wanted to change his statement relating to the use of a silver handgun instead of the pellet gun that he had mentioned in his first confession. He also admitted discarding this handgun in the area of Ledyard. The defendant also made some changes to his statement relating to his clothing and to the involvement of King, a third participant in the robbery.

On May 25, 1995, the defendant gave another written statement to the police. The defendant again signed a waiver of rights form prior to signing the statement of May 25. This statement was signed at the Hartford criminal courthouse with the advice and assistance of his personal attorney, and was sworn to by the defendant before a supervising inspector empowered to take oaths. At this time, the defendant advised his counsel that the first confession was untrue in part and that the May 25 confession was now accurate. The defendant did not state that any of his statements were involuntary or that he was signing under duress. On June 30, 1995, the defendant told his attorney that his confession of May 25, 1995, was untrue.

The defendant and Edwards testified at the suppression hearing that the police opened the apartment door on April 14, 1995, and that Lawlor had his gun drawn and shouted, "Get down, Duane, on the floor." Edwards claimed that she was pushed aside and that the police

handcuffed the defendant while he lay on the floor. The defendant claims that at this point, he was unlawfully arrested. The court, however, did not find the testimony of either the defendant or Edwards credible.

A

We first address the defendant's claim that the court improperly denied his motion to suppress his inculpatory statements on the ground that he was subject to a warrantless arrest without probable cause at his apartment. The essence of the defendant's claim is that he was in police custody both at his apartment and at the police station, thereby rendering him effectively seized and under arrest. The defendant argues that because probable cause did not exist at the time of his arrest, his confession should have been suppressed. We disagree.

"It is well settled that [i]f the police obtain physical evidence or statements as the result of the seizure of a person without probable cause, in violation of the constitution of Connecticut, article first, §§ 7 and 9, [or the fourth amendment to the United States constitution] the fruit of the poisonous tree doctrine requires that the evidence be suppressed as the product of the unlawful seizure. *State* v. *Greenfield*, 228 Conn. 62, 67, 634 A.2d 879 (1993); see *Brown* v. *Illinois*, 422 U.S. 590, 95 S. Ct. 2254, 45 L. Ed. 2d 416 (1975); *Wong Sun* v. *United States*, 371 U.S. 471, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963)." (Internal quotation marks omitted.) *State* v. *James*, 237 Conn. 390, 404, 678 A.2d 1338 (1996). Thus, "the trial court must make two determinations . . . (1) whether or not the defendant has been seized; and (2) whether or not there was probable cause for the seizure. *State* v. *Acquin*, 187 Conn. 647, 651, 448 A.2d 163 (1982), cert. denied, 463 U.S. 1229, 103 S. Ct. 3570, 77 L. Ed. 2d 1411 (1983) . . . ." (Citation omitted.) *State* v. *Damon*, 214 Conn. 146, 152, 570 A.2d 700, cert. denied, 498 U.S. 819, 111 S. Ct. 65, 112 L. Ed. 2d 40 (1990). "In determining

the threshold question of whether there has been a seizure, we examine the effect of the police conduct at the time of the alleged seizure, applying an objective standard. Under our state constitution, a person is seized only if in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. . . . Under the federal constitution, in contrast, a seizure occurs only if there is a show of physical force . . . or . . . submission to the assertion of authority." (Citations omitted; internal quotation marks omitted.) *State* v. *James*, supra, 404–405.

"A person is not arrested or seized [however] . . . if he freely chooses to enter into or continue an encounter with the police. . . . Police officers do not violate an individual's constitutional rights by approaching him, by asking him if he is willing to answer some questions, by putting questions to him if he is willing to listen, or by offering into evidence in a criminal prosecution his voluntary answers to such questions. *Florida* v. *Royer*, 460 U.S. 491, 497, 103 S. Ct. 1319, 75 L. Ed. 2d 229 (1983); *State* v. *Brown*, 199 Conn. 47, 52–53, 505 A.2d 1225 (1986). *State* v. *Damon*, supra, 214 Conn. 153–54. Among the factors that may be considered in determining whether a defendant's encounter with police was consensual in nature are: the time, place and purpose of the encounter; the words used by the officer; his tone of voice and general demeanor in requesting the defendant to accompany him to the police station; the officer's statements to others who were present during the encounter; the manner in which the defendant was escorted out of the house and transported to the stationhouse; the officer's response to any questions by the defendant . . . regarding the defendant's right to refuse to go to the stationhouse; and the defendant's verbal or non-verbal responses to any directions given to him by the officer." (Citation omitted; internal quota-

tion marks omitted.) *State* v. *James*, supra, 237 Conn. 405.

"A finding of fact will not be overturned on appeal unless it is clearly erroneous. *State* v. *Pittman*, 209 Conn. 596, 606, 553 A.2d 155 (1989); *State* v. *Young*, 191 Conn. 636, 652, 469 A.2d 1189 (1983) . . . . Where a constitutional issue turns upon a factual finding, however, this court has applied a stricter standard of review of the factual finding. The issue is factual, but our usual deference to the finding of the trial court on questions of this nature is qualified by the necessity for a scrupulous examination of the record to ascertain whether such a finding is supported by substantial evidence. *Culombe* v. *Connecticut*, 367 U.S. 568, 605, 81 S. Ct. 1860, 6 L. Ed. 2d 1037 (1961). *State* v. *Frazier*, 185 Conn. 211, 219, 440 A.2d 916 (1981), cert. denied, 458 U.S. 1112, 102 S. Ct. 3496, 73 L. Ed. 2d 1375 (1982)." (Citation omitted; internal quotation marks omitted.) *State* v. *Damon*, supra, 214 Conn. 154.

After conducting a scrupulous review of the record, we conclude that there is sufficient evidence to support the court's finding that the defendant was neither under arrest nor seized until after he voluntarily made the first oral confession to the police. The court, as fact finder, was confronted with two different versions of the events of what transpired at the defendant's apartment on April 14, 1995. The court determined that the defendant's version that he was forced to go to the police station and was thrown on the floor of the apartment and handcuffed, lacked credibility. The court, instead, found the version of the detectives more credible. The court concluded that prior to the point of confession the defendant was not in custody or under arrest, and that he was at liberty to leave the police station, to call an attorney or to return home.

On the basis of the version accepted by the court, which is supported by the evidence, a reasonable per-

son in the defendant's position would not have believed that he was in police custody. The defendant, therefore, was not unlawfully seized or arrested by the police at his apartment in violation of his constitutional rights.

B

The defendant next claims that the court improperly concluded that his oral confession, given on April 14, 1995, was voluntary. The defendant further maintains that his subsequent statements given to the police were products of his first unlawful statement and, therefore, should have been suppressed. On the basis of our review of the entire record, we agree with the court's determination that the statements were voluntarily made.

"The use of an involuntary confession in a criminal trial is a denial of due process of law. *Mincey* v. *Arizona*, 437 U.S. 385, 398, 98 S. Ct. 2408, 57 L. Ed. 2d 290 (1978); *Jackson* v. *Denno*, 378 U.S. 368, 376, 84 S. Ct. 1774, 12 L. Ed. 2d 908 (1964); *Culombe* v. *Connecticut*, [supra, 367 U.S. 602]; *State* v. *Shifflett*, 199 Conn. 718, 727, 508 A.2d 748 (1986)." *State* v. *Schroff*, 206 Conn. 182, 195, 536 A.2d 952 (1988). "The state has the burden of proving the voluntariness of a confession by a fair preponderance of the evidence." (Internal quotation marks omitted.) *State* v. *Pinder*, 250 Conn. 385, 418, 736 A.2d 857 (1999).

"Our Supreme Court has recently clarified the proper scope of appellate review of a trial court's determination of voluntariness. See [id., 420]. To begin, we note the established rule that the [t]rial court's findings as to the circumstances surrounding the defendant's interrogation and confession are findings of fact . . . which will not be overturned unless they are clearly erroneous. . . . In its review of state court determinations of voluntariness, the United States Supreme Court long has concluded that the ultimate question whether, under the

totality of the circumstances, the challenged confession was obtained in a manner compatible with the requirements of the Constitution is a matter for independent federal determination. . . . Consistent with the well established approach taken by the United States Supreme Court, we review the voluntariness of a confession independently, based on our own scrupulous examination of the record. The ambiguity apparent in [prior Connecticut Supreme Court] cases is that, while correctly citing to the relevant federal case law for the proposition that we will conduct an independent determination of voluntariness . . . [our Supreme Court has also] continued to state in these same cases that [o]n the ultimate issue of voluntariness . . . we will conduct an independent and scrupulous examination of the entire record to ascertain whether the trial court's finding is supported by substantial evidence. . . . [C]ontinued use of the substantial evidence language, when it is inconsistent with the plenary review that we in fact conduct, perpetuates a misstatement of the law. . . . [T]herefore, [the proper scope of review regarding] the ultimate issue of voluntariness requires us, not to ascertain whether the trial court's finding is supported by substantial evidence, but to conduct a plenary review of the record in order to make an independent determination of voluntariness. . . . Id., 420–21." (Internal quotation marks omitted.) *State* v. *Pin*, 56 Conn. App. 549, 556–57, 745 A.2d 204, cert. denied, 252 Conn. 951, 748 A.2d 299 (2000).

"In order to be voluntary a confession must be the product of an essentially free and unconstrained choice by the maker. . . . If it is not, if his will has been overborne and his capacity for self-determination critically impaired, the use of the confession offends due process. . . . The determination of whether a confession is voluntary must be based on a consideration of the totality of circumstances surrounding it . . . .

Factors that may be taken into account . . . include: the youth of the accused; his lack of education; his intelligence; the lack of any advice as to his constitutional rights; the length of detention; the repeated and prolonged nature of the questioning; and the use of physical punishment, such as the deprivation of food and sleep." (Citations omitted; internal quotation marks omitted.) *State* v. *James*, supra, 237 Conn. 410–11.

An application to the present case of the factors enunciated in *James* overwhelmingly substantiates the court's finding that the confession was voluntary. First, the defendant was well over the age of eighteen at the time the statements were made and, as indicated by the court, he was a literate, intelligent and articulate man. Also, we find not a scintilla of evidence suggesting that the defendant was ever subjected to any kind of physical punishment or that his questioning was unduly prolonged. The evidence reveals instead that the defendant was not handcuffed or restrained during the questioning. In fact, while en route to the police station, the defendant sat unrestrained in the back of an unmarked police cruiser and, upon arriving at the station, was at liberty to walk around the office, having access to the bathroom and a telephone. We find no evidence that the defendant was coerced into making his confession.

The circumstances surrounding the defendant's subsequent statements indicate that those statements were also made voluntarily. As to the statement made to Lawlor and Sherokow at the correctional institution, it was the defendant himself who initiated the call to Lawlor requesting to speak with him to amend his earlier statement. Finally, as to the third statement given to the police, in the presence of his attorney, on May 25, 1995, we find no evidence indicating that such statement was given involuntarily.

On the basis of our plenary review of the entire record, we conclude that the defendant's initial confes-

sion and subsequent statements were made to the police voluntarily.

## II

The defendant next claims that the court improperly admitted evidence of his prior convictions and denied his request that the count alleging criminal possession of a pistol or revolver be tried to the court. The defendant argues that the evidence should have been excluded because its prejudicial effect on the jury far outweighed any potential probative value. We disagree.

As a necessary element to establish criminal possession of a pistol or revolver pursuant to § 53a-217c, the state had to prove that the defendant was previously convicted of a felony. The state thus sought to admit evidence of the defendant's prior felony convictions of larceny in the second degree and robbery in the first degree. The defendant, in response, requested that the court admit redacted copies of the certified records of the convictions to indicate that the defendant had been convicted of unnamed felonies or, in the alternative, that the sixth count of criminal possession of a firearm be tried to the court. The court agreed to admit the evidence of the convictions as unspecified felonies only if the defendant did not testify. The defendant, however, chose to testify and, thereafter, the court allowed the state to introduce evidence of the defendant's prior convictions for larceny and robbery, and denied the defendant's request that the sixth count be tried to the court. The court reasoned that the named convictions were admissible against the defendant for impeachment purposes.

It is well settled that "evidence that a criminal defendant has been convicted of crimes on a prior occasion is not generally admissible. *State* v. *Geyer*, 194 Conn. 1, 5, 480 A.2d 489 (1984); *State* v. *Amaral*, 179 Conn. 239, 244, 425 A.2d 1293 (1979); C. McCormick, Evidence

(3d Ed.) § 43. There are, however, several well recognized exceptions to this rule, one of which is that [a] criminal defendant who has previously been convicted of a crime carrying a term of imprisonment of more than one year may be impeached by the state if his credibility is in issue. . . . In its discretion a trial court may properly admit evidence of prior convictions provided that the prejudicial effect of such evidence does not far outweigh its probative value. . . . [Our Supreme Court] has identified three factors which determine whether a prior conviction may be admitted: (1) the extent of the prejudice likely to arise; (2) the significance of the commission of the particular crime in indicating untruthfulness; and (3) its remoteness in time. *State* v. *Nardini*, [187 Conn. 513, 522, 447 A.2d 396 (1982)]; *State* v. *Harrell*, [199 Conn. 255, 261, 506 A.2d 1041 (1986)]. A trial court's decision denying a motion to exclude a witness' prior record, offered to attack his credibility, will be upset only if the court abused its discretion. *State* v. *Binet*, 192 Conn. 618, 623, 473 A.2d 1200 (1984) . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Crumpton*, 202 Conn. 224, 228–29, 520 A.2d 226 (1987).

"[Our Supreme Court] has recognized that crimes involving larcenous intent imply a general disposition toward dishonesty or a tendency to make false statements. . . . [I]n common human experience acts of deceit, fraud, cheating, or stealing . . . are universally regarded as conduct which reflects on a man's honesty and integrity . . . . [Furthermore] larceny, which is the underlying crime in any robbery, bears directly on the credibility of the witness-defendant." (Citations omitted; internal quotation marks omitted.) Id., 229. Thus, in the present case, the defendant's prior convictions of larceny and robbery were highly probative of his truthfulness and veracity.

With regard to the defendant's claim that he was entitled to a trial to the court on the count alleging criminal possession of a pistol or revolver, the issue is resolved by our conclusion as to the admission of evidence of his prior convictions. Evidence of the prior felony convictions of the defendant-witness was admissible to impeach his credibility. No prejudice occurred in admitting evidence of the defendant's prior convictions for the purpose of impeaching his credibility or in submitting to the jury the count of criminal possession of a pistol or revolver.

Accordingly, we conclude that the court did not abuse its discretion in admitting evidence of the defendant's prior convictions and in submitting the count of criminal possession of a pistol or revolver to the jury.

### III

The defendant claims that the court improperly allowed prosecutorial misconduct by the state in its closing argument, which deprived him of his rights to due process and to a fair trial in violation of the fifth, sixth and fourteenth amendments to the United States constitution and article first, § 8, of the constitution of Connecticut. Specifically, the defendant claims that the prosecutor's closing argument was improper because he (1) personally vouched for the credibility of the state's witnesses,[3] (2) insinuated that the defendant's own lawyers believed that he was guilty and that his

---

[3] In closing argument, the prosecutor stated: "[The defendant's] attack is on the professional integrity of two police officers here, Sherokow and Lawlor. That gets also to the heart of the case, and I ask you, do you think that those men, which I represent, they are, are professionally trained dedicated law enforcement officers, and if you think that for two seconds they have any desire to violate anyone's constitutional right, they'd be off that force in two seconds, and much less or much more so to me with two inspectors parade them in here, one after the other, to commit perjury. So I ask you, who do you want to believe in this case?"

confessions were true[4] and (3) argued facts not in evidence and misstated facts from hearings that occurred outside the jury's presence.[5] We disagree.

In his brief, the defendant acknowledges that his attorney did not object to the various comments made by the prosecutor in his closing argument. The defendant argues, however, that the prosecutor's alleged misconduct is reviewable by this court under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the

[4] The defendant claims the following statements made by the prosecutor were improper: "[The defendant] tells you he told [John] Watson, his own lawyer, that all those signed statements were false and that Watson knew about it yet he . . . signed these in front of Watson, and they're all untrue, do you believe that? Watson's an attorney, public defender, and then Watson testified for [the defendant] and said he had no idea whatsoever about the *falsity of those statements* until the thirtieth of June or the first part of July . . . . I quote you verbatim from the evidence . . . 'In view of the fact that he wished to take the position that those statements were untrue, I felt I could no longer represent him at that time.' That's his own lawyer. . . . Inconsistency No. 4, told Watson all the statements were false. Watson tells you, 'I didn't know a thing about that when they were signed until the thirtieth of June, five weeks later.' . . . Very important these four statements. His own lawyer gets out of the case when he discovers what [the defendant's] intentions were."

[5] The prosecutor stated: "Now, along with signing that statement which was totally false, he told me under cross that he was not [an imbecile]. He was not retarded. . . . You tell me what healthy person, it is not some kind of retardation to be easily led down the garden path, is going to stand there and admit doing a serious crime. . . . [T]hat doesn't happen. . . . He was promised . . . stuff which police officers just don't have any authority to make." The defendant also claims as improper the prosecutor's statements, "You can assume you can walk away, that's taken for granted," and, "[o]ut of fear of capital felony murder, I'll restrain, but I've got to say it again, there is no such crime. . . . The fact that he used by those, it would never be used by a law enforcement officer."

defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) Id.

Although the record is adequate for review and the defendant asserts a violation of fundamental rights, the defendant's claim fails to withstand scrutiny under the third *Golding* factor mandating a clear showing of the alleged constitutional violation and the deprivation of a fair trial. In considering the defendant's claim of prosecutorial misconduct, "we ask whether the prosecutor's conduct so infected the trial with unfairness as to make the resulting conviction a denial of due process. . . . We do not focus alone, however, on the conduct of the prosecutor. The fairness of the trial and not the culpability of the prosecutor is the standard for analyzing the constitutional due process claims of criminal defendants alleging prosecutorial misconduct." (Internal quotation marks omitted.) *State* v. *Clark*, 48 Conn. App. 812, 827–28, 713 A.2d 834, cert. denied, 245 Conn. 921, 717 A.2d 238 (1998). Furthermore, "the record must reveal a pattern of misconduct pervasive throughout the trial or conduct that was so blatantly egregious that it infringed on the defendant's right to a fair trial. . . . *State* v. *Williams*, 231 Conn. 235, 246, 645 A.2d 999 (1994)." (Internal quotation marks omitted.) *State* v. *Clark*, supra, 828–29. "In determining whether a prosecutor's conduct was so egregious as to deny a defendant a fair trial, we note that some leeway must be afforded to the advocates in offering arguments to the jury in final argument. [I]n addressing the jury, [c]ounsel must be allowed a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of the argument." (Internal quotation marks omitted.) Id., 829–30.

Significantly, "[b]oth this court and our Supreme Court have held that where a criminal defendant does not object and take exception to allegedly prejudicial remarks of the state's attorney, either at the time they were made or at the close of argument, he waives his right to press the claimed error on appeal. *State* v. *Lubesky*, 195 Conn. 475, 484, 488 A.2d 1239 (1985); *State* v. *Malley*, 167 Conn. 379, 387, 355 A.2d 292 (1974). Where counsel fails to object or to request a curative charge we have presumed that defense counsel did not view the remarks as so prejudicial that his client's right to a fair trial was seriously jeopardized. *State* v. *Lubesky*, supra [484]; *State* v. *Falcone*, 191 Conn. 12, 23 n.13, 463 A.2d 558 (1983). *State* v. *Tyler-Barcomb*, [197 Conn. 666, 673, 500 A.2d 1324 (1985), cert. denied, 475 U.S. 1109, 106 S. Ct. 1518, 89 L. Ed. 2d 916 (1986)]; *State* v. *Chace*, 199 Conn. 102, 108, 505 A.2d 712 (1986); *State* v. *Bell*, 13 Conn. App. 420, 426–27, 537 A.2d 496 (1988). . . . *State* v. *Kelly*, 23 Conn. App. 160, 170–71, 580 A.2d 520, cert. denied, 216 Conn. 831, 583 A.2d 130 (1990), cert. denied, 499 U.S. 981, 111 S. Ct. 1635, 113 L. Ed. 2d 731 (1991)." (Internal quotation marks omitted.) *State* v. *Eason*, 47 Conn. App. 117, 121, 703 A.2d 130 (1997), cert. denied, 243 Conn. 962, 705 A.2d 552 (1998).

After reviewing the record and transcripts of the trial court, we conclude that the statements of the prosecutor during closing argument of which the defendant complains do not rise to the level of blatant egregiousness. The comments regarding the credibility of the police officers were isolated comments made by the prosecutor in the heat of his closing argument. As such, the comments did not so infect the trial with a pattern of unfairness. Moreover, the prosecutor did not improperly insinuate that the defendant's own lawyers believed that he was guilty. The comments were not egregious because they were made merely in an attempt to rebut the defendant's claim that he and his attorney

knew that his statements were not true. Finally, the prosecutor did not improperly assert facts not in evidence, but rather, appealed to the jury's observations and experiences of everyday life. See *State* v. *Rolli,* 53 Conn. App. 269, 281, 729 A.2d 245, cert. denied, 249 Conn. 926, 733 A.2d 850 (1999). The prosecutor was simply appealing to the common sense of the jurors when he argued that it was unlikely that someone as intelligent as the defendant would be pressured into confessing to a crime that he did not commit. We conclude that the prosecutor's statements during closing argument did not so infect the trial with unfairness as to deny the defendant his rights to a fair trial and to due process under either the federal or state constitutions and, accordingly, the defendant's claim does not satisfy the third prong of *Golding.*

IV

Finally, the defendant claims that the court's supplemental jury instruction regarding physical evidence that was referred to by the prosecution, but that was not admitted into evidence, was improper and, therefore, he was denied his right to a fair trial. We are not persuaded.

The following additional facts are necessary for the resolution of this issue. During deliberations, the jury sent the court a note asking if it should consider testimony relating to certain items that were taken from the home of the defendant's mother pursuant to a warrant, namely, a "Taurus key ring," "broken glass," a "starter pistol," "clothing" and "a bullet." The jury was uncertain whether it could consider these items because they had not been included in the evidence that it had received. After a discussion with counsel, the court instructed the jury that it could not consider testimony or comments relating to the key ring, the clothing or the bullet, but that it could consider testimony as to the broken glass and the starter pistol if it determined, on the basis of

reasonable inferences, that the items were relevant to the case.[6]

The defendant claims that the portion of the instruction directing the jury to disregard the Taurus key ring, which depicted the astrological sign of the zodiac and not the Taurus car brand, was misleading to the jury. The defendant argues that the jury charge was not specific enough in instructing the jury to refrain from considering a relationship between the key ring and the Ford Taurus that had been carjacked.

The defendant concedes that at no time did he object to the court's supplemental jury instruction. He seeks review of this unpreserved claim, however, under *Golding*. Although the record is adequate for review, we find that the defendant's claim fails to satisfy the second prong of the *Golding* test because his claim of instructional impropriety is not of constitutional magnitude. " 'Just as every claim of evidentiary error by the trial court is not truly constitutional in nature; see, e.g., [*State* v. *Golding*, supra, 213 Conn. 241]; every claim of instructional error is not truly constitutional in nature. We have recognized, for example, that claimed instructional errors regarding the elements of an offense; see, e.g., *State* v. *Boles*, 223 Conn. 535, 543,

---

[6] In relevant part, the court's supplemental instruction to the jury was as follows: "Let me say at the top of these remarks, that the fact that an item is not physically with you doesn't necessarily detract from it. Every noun that is mentioned in any case is not necessarily made an exhibit. What that noun represents is made an exhibit in a case. The fact that it is not physically with you does not preclude you from using it as you see fit, consistent with my instructions, if you found that it is relevant, it is circumstantial, it is substantive and it is probative. So you can use anything in this case that was not struck by the court and that was presented before you as part of the overall evidentiary picture. . . . I have secured the approval of both lawyers that the Taurus key ring and the clothing and bullet, two of the four items you listed, that there was no evidence substantively or probatively by which you could draw a reasonable inference from either the Taurus key ring and/or the clothing and bullet that are referenced in some of the testimony that came before you."

613 A.2d 770 (1992); and claimed instructional errors regarding the burden of proof or the presumption of innocence; see, e.g., *State* v. *Adams*, 225 Conn. 270, 289, 623 A.2d 42 (1993); are constitutional in nature, so as to satisfy the second *Golding* requirement. We have also recognized, however, that claimed instructional errors regarding general principles of credibility of witnesses are not constitutional in nature. *State* v. *Tatum*, 219 Conn. 721, 738, 595 A.2d 322 (1991). Indeed, it would trivialize the constitution to transmute a nonconstitutional claim into a constitutional claim simply because of the label placed on it by a party or because of a strained connection between it and a fundamental constitutional right.' *State* v. *Walton*, 227 Conn. 32, 64–65, 630 A.2d 990 (1993)." *State* v. *Dash*, 242 Conn. 143, 151–52, 698 A.2d 297 (1997). Furthermore, "the admissibility of evidence is a matter of state law and unless there is a resultant denial of fundamental fairness or the denial of a specific constitutional right, no constitutional issue is involved. *State* v. *Periere*, [186 Conn. 599, 611, 442 A.2d 1345 (1982)], quoting *United States ex rel. Bibbs* v. *Twomey*, 506 F.2d 1220, 1222 (7th Cir. 1974). *State* v. *Talton*, 197 Conn. 280, 289–90, 497 A.2d 35 (1985)." (Internal quotation marks omitted.) *State* v. *Vilalastra*, 207 Conn. 35, 46, 540 A.2d 42 (1988).

The defendant does not claim error regarding the burden of proof or the presumption of innocence, nor does he refute the court's charge on the elements of the crime. The defendant, instead, requests review on an evidentiary matter. We decline to review the defendant's claim.

The judgment is affirmed.

In this opinion the other judges concurred.