STATE OF CONNECTICUT *v.* HERBERT CLARK
(AC 32781)

Beach, Robinson and Bishop, Js.

Argued April 10—officially released July 31, 2012

*Richard E. Condon, Jr.*, senior assistant public defender, for the appellant (defendant).

*Sarah Hanna*, assistant state's attorney, with whom, on the brief, were *Brian Preleski*, state's attorney, and *Brett J. Salafia*, assistant state's attorney, for the appellee (state).

*Opinion*

BISHOP, J. The defendant, Herbert Clark, appeals from the judgment of conviction, rendered after a jury trial, of assault in the first degree in violation of General Statutes § 53a-59 (a) (1). On appeal, the defendant claims that the trial court improperly (1) allowed the introduction of four prior felony convictions for the purpose of impeachment and (2) issued a standing criminal restraining order against him. We affirm in part and reverse in part the judgment of the trial court.

The jury reasonably could have found the following facts. On the night of October 4, 2008, the victim, Jacqueline Hauter, went to Evey's Sports Café (bar) in New Britain. While the victim talked with her friend, Evelyn

Pawlina, the defendant approached and engaged Pawlina, whom he knew, in small talk during which Pawlina introduced the victim to the defendant. At some point during their conversation, the defendant brought up Pawlina's pending divorce, which Pawlina indicated she did not want to discuss. During this exchange between Pawlina and the defendant, the victim intervened, telling the defendant to leave Pawlina alone. When the defendant did not stop speaking with Pawlina, the victim began to curse at the defendant, and an argument between the two ensued. At some point during the verbal exchange, the defendant struck the victim in the face with a beer bottle, causing her to fall to the floor. The defendant immediately left the bar as a number of patrons rushed to the aid of the victim. Within approximately ten minutes, the police and paramedics arrived at the bar.

When New Britain police Officer Philip Violette attempted to speak with the victim at the scene, she was uncooperative, speaking only briefly with the officer. Violette also spoke to Pawlina and Anne Marie Degnan, a patron of the bar, but neither woman provided a written statement at that point. The paramedics briefly attended to the victim at the bar before she was transported to Hartford Hospital (hospital). According to Bradley Dreifuss, a physician who treated the victim at the hospital, the victim was struck with such force that two of her front teeth became embedded in her upper lip, and she suffered a laceration to her neck. Dreifuss indicated that he required the assistance of the maxillofacial surgeon team to extract the victim's upper lip from her teeth and to suture the wound. The victim was released from the hospital the next day.

Thereafter, on January 20, 2009, the defendant was arrested and charged with assault in the first degree in

violation of § 53a-59 (a) (1)[1] and assault in the first degree in violation of § 53a-59 (a) (2).[2] Following a jury trial, the jury returned a verdict finding the defendant not guilty of assault in the first degree in violation of § 53a-59 (a) (2), but guilty of assault in the first degree in violation of § 53a-59 (a) (1). The court rendered judgment in accordance with the jury's verdict, and subsequently sentenced the defendant to a twenty year term of imprisonment and ordered a standing criminal restraining order pursuant to General Statutes (Rev. to 2007) § 53a-40e, as amended by Public Acts 2007, No. 07-123, § 5, prohibiting the defendant from having any contact with the victim.[3] This appeal followed. Additional facts will be set forth as necessary.

I

The defendant claims that the court abused its discretion in denying his motion in limine that sought to prevent the state from offering into evidence four prior felony convictions of the defendant to impeach his credibility. More specifically, the defendant contends that the court abused its discretion because the four felonies at issue were more than ten years old and did not bear directly on his veracity. In assessing this claim, we first consider whether the admission of the four prior felonies in question was an abuse of discretion and, if so,

[1] General Statutes § 53a-59 (a) provides in relevant part: "A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . ."

[2] General Statutes § 53a-59 (a) provides in relevant part: "A person is guilty of assault in the first degree when . . . (2) with intent to disfigure another person seriously and permanently, or to destroy, amputate or disable permanently a member or organ of his body, he causes such injury to such person or to a third person . . . ."

[3] At the defendant's sentencing on August 16, 2010, at the victim's request, the state had asked the court to consider issuing a standing criminal restraining order pursuant to § 53a-40e.

whether the admission was, nevertheless, harmless in light of all the evidence properly adduced at trial. The following additional facts are relevant to our resolution of this claim.

Prior to trial, the defendant filed a "Motion in Limine To Establish Fair Procedures Determining the Admissibility at Trial of Evidence Concerning the Defendant's Prior Record." On June 8, 2010, the court addressed the defendant's motion. The state represented that it intended to offer five prior felonies by date, but without reference to the identity of the offenses, for the purpose of impeachment. The offenses included: (1) a 1990 conviction for possession of narcotics, (2) a 1993 conviction for the sale of illegal drugs, (3) a 1993 conviction for assault in the second degree, (4) a 1993 conviction for having a weapon in a correctional institution and (5) a 1997 conviction for possession of narcotics. The defendant did not object to the admission of his 1997 felony conviction for possession of narcotics. The defendant did object, however, to the admission of the other four felonies on the ground that they were more than ten years old, they did not implicate truthfulness and their admission would be more prejudicial than probative. On June 9, 2010, before the defendant testified, the court ruled that the state would be permitted to impeach the defendant's testimony by eliciting evidence of his prior five convictions as unnamed felonies. Thereafter, the defendant testified at trial that he was convicted of five unspecified felonies, and he provided the calendar year of each conviction.

We next set forth the well established principles that govern our review of the defendant's claim. "[T]he credibility of a witness may be attacked by introducing the witness' conviction of a crime if the maximum penalty for that conviction is imprisonment exceeding one year." (Internal quotation marks omitted.) *State* v. *Morgan*, 70 Conn. App. 255, 271, 797 A.2d 616, cert. denied,

261 Conn. 919, 806 A.2d 1056 (2002). "In its discretion a trial court may properly admit evidence of prior convictions provided that the prejudicial effect of such evidence does not far outweigh its probative value. . . . [Our Supreme Court] has identified three factors which determine whether a prior conviction may be admitted: (1) the extent of the prejudice likely to arise; (2) the significance of the commission of the particular crime in indicating untruthfulness; and (3) its remoteness in time. . . . A trial court's decision denying a motion to exclude a witness' prior record, offered to attack his credibility, will be upset only if the court abused its discretion." (Citations omitted; internal quotation marks omitted.) *State* v. *Banks*, 58 Conn. App. 603, 616, 755 A.2d 279, cert. denied, 254 Conn. 923, 761 A.2d 755 (2000). Those three factors have been incorporated into Connecticut's code of evidence. See Conn. Code Evid. § 6-7 (a).[4]

Our Supreme Court has stated, as well, that "[a]lthough we have left to the trial court the responsibility for determining whether, in a particular case, a witness' criminal conviction may be excluded on the grounds that it is too old, we have sanctioned a general guideline for the determination of remoteness that parallels rule 609 (b) of the Federal Rules of Evidence.[5]

---

[4] Section 6-7 (a) of the Connecticut Code of Evidence provides: "General rule. For the purpose of impeaching the credibility of a witness, evidence that a witness has been convicted of a crime is admissible if the crime was punishable by imprisonment for more than one year. In determining whether to admit evidence of a conviction, the court shall consider: (1) The extent of the prejudice likely to arise, (2) the significance of the particular crime in indicating untruthfulness, and (3) the remoteness in time of the conviction."

[5] Rule 609 (b) of the Federal Rules of Evidence provides in relevant part: "Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect. . . ."

Rule 609 (b) establishes a ten year limitation from conviction or release from resulting confinement upon the use of the conviction for impeachment purposes unless the probative value of the conviction substantially outweighs its prejudicial effect." (Internal quotation marks omitted.) *State* v. *Carter*, 228 Conn. 412, 431, 636 A.2d 821 (1994). Notwithstanding the general guideline of ten years, the court has recognized, however, that "convictions having some special significance upon the issue of veracity surmount the standard bar of ten years and qualify for the balancing of probative value against prejudice." (Internal quotation marks omitted.) *State* v. *Cooper*, 227 Conn. 417, 436, 630 A.2d 1043 (1993). Finally, in reviewing a trial court's exercise of discretion on this issue, we have stated that "[w]e will not disturb the trial court's determination as to the admissibility of a prior conviction to impeach a witness absent an abuse of discretion . . . and a showing by the defendant of substantial prejudice or injustice." (Internal quotation marks omitted.) *State* v. *Commins*, 83 Conn. App. 496, 509, 850 A.2d 1074 (2004), aff'd, 276 Conn. 503, 886 A.2d 824 (2005). With these principles in mind, we now turn to the defendant's two part claim: first, that the admission of the four prior felony convictions constituted an abuse of discretion; and second, that the impropriety was harmful, thereby entitling him to a new trial.

As we have indicated, our determination of whether a defendant's prior felony conviction is admissible for impeachment purposes is guided primarily by three factors, namely: (1) the extent to which the use of the conviction is likely to prejudice the party seeking its exclusion; (2) the significance of the commission of the particular crime as an indicator of untruthfulness; and (3) the conviction's remoteness in time. *State* v. *Banks*, supra, 58 Conn. App. 616. As to the first factor, we note, initially, that the convictions at issue pertained to the defendant and not merely to a defense witness. Our

courts have routinely highlighted that the danger of unfair prejudice is far greater when the accused is the witness in question because, in contrast to the circumstances in which other witnesses testify, "the jury may be prejudiced not merely on the question of credibility but also on the ultimate question of guilt or innocence." (Internal quotation marks omitted.) *State* v. *Cooper*, supra, 227 Conn. 435; see also *State* v. *Commins*, supra, 83 Conn. App. 511. As to the second factor, the state has acknowledged, and we agree, that, although the four felony convictions in question reflect adversely on the defendant's general character and, as felonies, they have some bearing on credibility, none of the felonies bears any special relationship or direct nexus to the defendant's credibility. In this regard, the relevance of the convictions under scrutiny in the case at hand can readily be contrasted with convictions for crimes directly involving dishonesty or deceit, such as a conviction for perjury, which would bear directly on the credibility of a witness.[6]

Furthermore, even though the defendant's past felony convictions could fairly be viewed as relevant to a general bad character, their remoteness in time contributes little to an assessment of the defendant's present disposition to truthfulness. "It is a rare prior conviction which is more than ten years old which retains the minimal probative value sufficient to overcome its prejudice." *State* v. *Roman*, 6 Conn. App. 189, 192, 504 A.2d 529 (1986). Thus, as noted by this court in *Roman*, any

---

[6] We acknowledge that the prior convictions were introduced as unnamed felonies. While not naming the felony convictions may ameliorate the prejudicial impact of their admission, the determination to allow their admission as unnamed felonies does not increase their probative value on the issue of veracity. In this instance, we note that the state conceded both during the hearing on the defendant's motion in limine and at oral argument before this court that none of the convictions in question bear directly on the defendant's veracity as a witness.

probative value the prior felony convictions under scrutiny may have had for the purposes of impeachment was significantly devalued by the passage of substantially more than one decade since their occurrence.[7] In sum, the admission of the four prior felony convictions met none of the three part criteria recognized by our courts. See *State* v. *Banks*, supra, 58 Conn. App. 616. We conclude, therefore, that it was an abuse of discretion for the court to admit the prior convictions for the purpose of impeaching the defendant's credibility.

Our inquiry, does not end, however, with the resolution of the admissibility issue. To establish that he is entitled to a new trial, the defendant must show not only that the trial court improperly admitted the prior felony convictions, but also that the court's ruling caused him substantial prejudice. *State* v. *Beliveau*, 237 Conn. 576, 592, 678 A.2d 924 (1996); see also *State* v. *Perez*, 87 Conn. App. 113, 121, 864 A.2d 52 (2005) ("admission of prior felony convictions for credibility purposes is an evidentiary matter, not a constitutional one"); *State* v. *Jefferson*, 67 Conn. App. 249, 265 n.10, 786 A.2d 1189 (2001) (because court's ruling regarding admission of prior felonies was evidentiary and not constitutional in nature, defendant bears burden of demonstrating harm), cert. denied, 259 Conn. 918, 791 A.2d 566 (2002). On this point, the defendant argues that the introduction of the prior felony convictions improperly provided a basis for the jury to discredit his testimony and that, because the convictions conveyed to the jury that he had a general disposition to commit crimes, the jury was likely to have concluded that he

[7] As noted, one of the convictions took place approximately twenty years before trial, two of the convictions occurred approximately seventeen years before trial, and one occurred approximately thirteen years before trial. Although an argument could be made that the most recent of this group was not so far beyond the ten year guidepost to make its admission improper, we need not resolve that question because of the palpable remoteness of the three earlier convictions.

committed the crime in question. The state responds that, even if the admission of the prior felony convictions was improper, the defendant has failed to demonstrate that the prior felony evidence caused him harm at trial. We agree with the state.

Our review of the record leads us to the conclusion that the state's case against the defendant was strong and largely uncontested. Indeed, a substantial portion of the defendant's testimony corroborated the accounts given by witnesses for the state. All the witnesses, including the defendant, testified that he was present at the bar during the evening in question, that the defendant engaged in a verbal exchange with the victim and that the defendant struck the victim in the mouth. While the victim's and the defendant's testimony diverged on whether the victim had first shoved the defendant, that portion of the testimony was relevant only to the defendant's claim of self-defense, which was otherwise soundly defeated by the state's vigorous examination of the defendant, leading him to acknowledge that he made no substantial effort to retreat when he claimed that the victim had been the aggressor toward him. As to the actual causation of the victim's injuries, the defendant admitted that, when he swung his arm to punch the victim, he may have hit a beer bottle in the process, causing glass from the bottle to ultimately strike the victim. Thus, the only material variance between the victim's testimony and the defendant's as to the operative facts of the assault is her claim that he struck her twice, once in the mouth and again on the side of her head with a bottle and the defendant's claim that he struck her once with his fist only while possibly striking a bottle in the process. Furthermore, as to this point of contention, the state adduced testimony from two individuals, Degnan and Pawlina,[8] both of

---

[8] Although neither Degnan nor Pawlina provided written statements at the bar on the evening of the assault, they both later provided sworn statements to the police stating that they saw the defendant hit the victim with

whom were at the bar on the night in question. While both Degnan and Pawlina testified that they did not observe the defendant strike the victim, they were caused to admit, under hostile questioning, that they had previously provided written statements to the police in which they stated that they had seen the defendant hit the victim with a beer bottle. These statements, thus, corroborated the victim's version of the operative events.

Furthermore, as to the likely prejudice to the defendant, we are mindful that he was acquitted of the charge of assault in the first degree causing permanent disfigurement despite testimony from a physician and the victim that the victim suffered sufficient wounds to require suturing both to her neck and mouth.[9] Thus, contrary to the defendant's contentions, it is evident that the jury was discerning in its assessment of the state's claims and that it was not, as claimed by the defendant, disposed to find him guilty on the ground that he had prior felony convictions. Accordingly, the defendant has not satisfied his burden of demonstrating harmful error.

## II

The defendant additionally claims that the court exceeded its statutory authority by issuing a standing

a beer bottle on the night of October 4, 2008. Both witnesses also picked the defendant out of an eight person photographic array. At trial, however, Pawlina testified that she did not recall the victim being hit in the face or getting cut on her neck. Likewise, Degnan testified that she did not see the defendant hit the victim. Both Degnan's and Pawlina's statements were admitted as substantive evidence during trial pursuant to *State* v. *Whelan*, 200 Conn. 743, 753, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986). The defendant does not claim on appeal that these prior inconsistent statements were improperly admitted into evidence.

[9] General Statutes § 53a-59 (a) provides in relevant part: "A person is guilty of assault in the first degree when . . . (2) with intent to disfigure another person seriously and permanently, or to destroy, amputate or disable permanently a member or organ of his body, he causes such injury to such person or to a third person . . . ."

criminal restraining order against him pursuant to § 53a-40e.[10] More specifically, he contends that the statute is inapplicable because it authorizes the court to issue a criminal restraining order only when a defendant has been convicted of certain crimes, including the crime at hand, against a family or household member and, because the victim is neither the defendant's family or household member, the court lacked the authority to issue the restraining order in question. The state concedes that the defendant's assertion is correct. We agree as well.

Well established tenets of statutory construction govern our consideration of the defendant's claim. "Statutory construction is a question of law and, therefore, our review is plenary. . . . [O]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Citation omitted; internal quotation marks omitted.) *State* v. *Velasco*, 253 Conn. 210, 219–20, 751 A.2d 800 (2000); see also General Statutes § 1-2z.

At the outset, we note that § 53a-40e authorizes the court to issue a standing criminal restraining order in

---

[10] General Statutes (Rev. to 2007) § 53a-40e, as amended by Public Acts 2007, No. 07-123, § 5, provides in relevant part: "(a) If any person is convicted of . . . (2) any crime that the court determines constitutes a family violence crime, as defined in section 46b-38a, or attempt or conspiracy to commit any such crime, the court may, in addition to imposing the sentence authorized for the crime under section 53a-35a or 53a-36, if the court is of the opinion that the history and character and the nature and circumstances of the criminal conduct of such offender indicate that a standing criminal restraining order will best serve the interest of the victim and the public, issue a standing criminal restraining order which shall remain in effect until modified or revoked by the court for good cause shown. . . ."

the instance of an individual convicted under § 53a-59. Thus, the conviction was apt for such an order; however, the court's authority to issue a criminal restraining order is not unbounded, as it may be imposed against only those who have been convicted of crimes against "a family or household member," as defined in General Statutes § 46b-38a. That statute, in turn, defines a family or household member as: "(A) spouses, former spouses; (B) parents and their children; (C) persons eighteen years of age or older related by blood or marriage; (D) persons sixteen years of age or older other than those persons in subparagraph (C) presently residing together or who have resided together; (E) persons who have a child in common regardless of whether they are or have been married or have lived together at any time; and (F) persons in, or have recently been in, a dating relationship." General Statutes § 46b-38a (2). Suffice to say, the brief and violent moment in time that the victim and the defendant shared clearly reveals that the relationship between them fits none of the statutory definitions that underlie the court's authority to issue a standing criminal restraining order. In short, the victim and the defendant were not family or household members with one another. The court was therefore without authority to issue a standing criminal restraining order pursuant to § 53a-40e in the case at hand.[11]

The judgment is reversed only as to the issuance of the restraining order and the case is remanded with direction to vacate that order. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.

---

[11] That is not to say that, if the court had ordered a period of probation, it could not have included, as a condition of probation, a reasonable restraint on the defendant's contact with the victim during the period of probation. In that instance, such an order would be collateral to the court's general authority to impose reasonable probation conditions and would not flow from the statutory authority granted by the General Assembly in § 53a-40e.