******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* PATRICK YOUNG
(AC 37995)
(AC 37997)

Alvord, Keller and Beach, Js.

*Syllabus*

Convicted, after a jury trial, of the crimes of assault in the first degree and carrying a pistol without a permit in connection with an incident in which the defendant shot the victim, the defendant, whose probation was revoked in connection with his conviction, appealed to this court. The defendant's girlfriend, Z, had stolen a $6500 check, and she and the defendant asked the victim and M to assist them in cashing it. The victim and M were able to obtain $200 by depositing the check into an automated teller machine, but when they notified the defendant, he questioned whether they had received the full amount of the check and kept the remainder of the money. Z and the defendant thereafter picked up the victim and M in Z's car, and the defendant repeatedly questioned them regarding the money. Z drove to a wooded area and stopped the car. The defendant then retrieved a silver .38 caliber revolver from the car's glove compartment, again asked about the money, forced the victim to exit the car, and pointed the revolver at her head. At some point, the victim was able to flee into the woods, and the defendant returned to the car, told M to exit the car, and he and Z drove away. While the victim and M walked down the road to search for help, the defendant emerged from behind some bushes, pointed the revolver at the victim's head, and shot her with multiple bullets. At trial, the court permitted the state to introduce evidence of the names of certain felony convictions of which the defendant, who testified at his trial, previously had been convicted. The court permitted the admission of the evidence only for the purpose of impeaching the defendant's veracity. *Held*:

1. The defendant could not prevail on his claim that there was insufficient evidence to support his conviction of assault in the first degree because of inconsistencies between the trial testimony of the victim, M and Z, and their statements to the police, there having been ample evidence from which the jury reasonably could have found that the defendant had caused serious physical injury to the victim by means of a deadly weapon and that he had intended to cause such injury: the victim testified and the evidence established that the defendant had pointed a silver revolver at her head, that he had shot her in her hand and that the bullet existed through her wrist, that he had shot her under her arm, near her rib cage, that Z had directed the police to a the location in a marina where the defendant had discarded the revolver, that a silver .38 caliber revolver was recovered in that location, and that a .38 caliber bullet was surgically removed from the victim's torso.

2. There was no merit to the defendant's claim that the trial court had abused its discretion in admitting into evidence the names of certain of his prior felony convictions for the purpose of impeachment; the defendant's prior convictions for larceny and robbery related to his untruthfulness, and, therefore, they were relevant to the jury's evaluation of his veracity, the dissimilar nature of the crimes charged in the present case, as compared to the nature of the prior felony convictions, minimized the chance that the jury would view the prior convictions as propensity evidence, and this court could not conclude that the evidence of those convictions was likely to arouse the emotions of the jurors.

3. The trial court did not abuse its discretion by giving a supplemental charge to the jury in which it named the defendant's prior felony convictions, thereby highlighting those convictions, the charge having protected the defendant from the jury's improper use of his prior convictions as evidence that he had committed the charged crimes: the court, in its supplemental charge, properly instructed the jury that the defendant's prior convictions were to be used only for assessing the defendant's credibility, as the court in its main charge inadvertently had omitted to emphasize to the jury that the convictions were admitted for that limited purpose; moreover, contrary to the defendant's claim, the court did not

improperly marshal the evidence by naming the defendant's prior felony convictions in its supplemental charge, as the names of the convictions already were in evidence, and the court's reference to them properly guided the jury in understanding the limitations on how such evidence could be used and, when viewed in context, served to protect the defendant against the improper use of the evidence rather than to highlight adverse evidence.

Argued January 31—officially released July 18, 2017

(Appeal from Superior Court, judicial district of New Haven, B. Fischer, J.)

*Procedural History*

Substitute information, in the first case, charging the defendant with the crimes of assault in the first degree, attempt to commit assault in the first degree, and carrying a pistol without a permit, and substitute information, in the second case, charging the defendant with violation of probation, brought to the Superior Court in the judicial district of New Haven, where the first case was tried to the jury before *B. Fischer, J.*; thereafter, the court denied the defendant's motion to preclude certain evidence; verdict of guilty of assault in the first degree and carrying a pistol without a permit; subsequently, the second case was tried to the court; judgment in accordance with the verdict and judgment revoking the defendant's probation, from which the defendant filed separate appeals with this court; thereafter, this court consolidated the appeals. *Affirmed.*

*Mary Boehlert*, assigned counsel, for the appellant (defendant).

*James M. Ralls*, assistant state's attorney, with whom, on the brief, were *Patrick Griffin*, state's attorney, and *John Doyle*, senior assistant state's attorney, for the appellee (state).

*Opinion*

BEACH, J. In this consolidated appeal, the defendant, Patrick Young, appeals from the judgment of conviction, rendered after a jury trial, of assault in the first degree in violation of General Statutes § 53a-59 (a) (1) and carrying a pistol without a permit in violation of General Statutes § 29-35, and the judgment revoking his probation. The defendant claims that (1) there was insufficient evidence to support his conviction for assault in the first degree, (2) the trial court abused its discretion by admitting into evidence the names of his prior felony convictions, and (3) the court abused its discretion by giving a supplemental charge to the jury in which it named the defendant's prior convictions. We disagree and affirm the judgments of the trial court.

The following facts, as reasonably could have been found by the jury, and procedural history are relevant to this appeal. The defendant's girlfriend, Maria Zambrano, worked as a home health care aide and stole a $6500 check from one of her patients. After Zambrano told the defendant about the stolen check, the defendant, who did not have a bank account, approached Diane Turner, his cousin, and Jessica McFadden, Turner's roommate, for assistance in cashing the check. Zambrano, Turner, McFadden, and the defendant rode together in Zambrano's car in order to cash the check. McFadden was unable to cash the check at the first bank that she tried because the check was postdated; the defendant then had Zambrano alter the date on the check. At a second bank, McFadden was able to obtain $200 by depositing the check into an automatic teller machine. The bank later informed McFadden that the check was stolen and that she would be arrested if she did not repay the bank $200. The defendant became angry when he was told that the check would not be cashed for its entire amount. He thought that Turner and McFadden had lied to him, cashed the check, and kept for themselves the full amount of $6500.

On the night of the following day, June 24, 2013, Zambrano and the defendant picked up Turner and McFadden at their New Haven residence under the guise of driving to Hamden to retrieve $200 so that McFadden could repay the bank. While Zambrano drove, the defendant repeatedly questioned Turner and McFadden about what they did with the $6500 and why they had not given it to him. Zambrano stopped the vehicle on a dark road near a wooded area. The defendant again asked Turner and McFadden about the location of the money. The defendant reached into the car's glove compartment, retrieved a silver revolver, waved the revolver in the direction of the backseat where Turner and McFadden were seated, and again asked where the money was.

The defendant forced Turner to exit the car. The

defendant pointed the revolver at Turner's head, and she pleaded for her life. At some point, Turner ran into the woods and yelled for McFadden to follow. The defendant then returned to the car, pointed the revolver at McFadden, told her to exit the car, and he and Zambrano drove away. McFadden found Turner in the woods, and they hid. They then left the wooded area and walked down the road to search for help. The defendant jumped out from behind bushes and pointed the gun at Turner's head; Turner raised her hands. The defendant said that Turner was throwing him under the bus. He then shot Turner in her left palm, and the bullet exited by her wrist. The defendant fired more shots, and one bullet hit Turner under her right arm near her rib cage. The defendant then ran away, and McFadden and Turner hid in the woods before flagging down a work crew for assistance.

Turner was taken to Yale-New Haven Hospital and treated for her injuries. Doctors were unable to remove a .38 caliber bullet at that time, but it was surgically removed months later when it migrated near her spine. Zambrano informed the police that she had accompanied the defendant to a marina where he threw the revolver off the dock. A police dive team recovered the revolver, which was a .38 caliber stainless steel Smith & Wesson revolver.

Following a jury trial, the defendant was convicted of assault in the first degree and carrying a pistol without a permit.[1] The defendant was on probation at the time, and the court found him to be in violation of his probation. The defendant was sentenced to a total effective sentence of thirty-one years incarceration, execution suspended after twenty-four years, with five years of probation. This consolidated appeal followed.[2]

I

The defendant first claims that there was insufficient evidence to support his conviction of assault in the first degree. We disagree.

"In reviewing a sufficiency of the evidence claim, we apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [jury] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt . . . . This court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict. . . . Moreover, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty." (Citation omitted; internal quotation marks omitted.) *State* v. *Revels*, 313 Conn. 762,

778, 99 A.3d 1130 (2014), cert. denied, U.S. , 135 S. Ct. 1451, 191 L. Ed. 2d 404 (2015).

General Statutes § 53a-59 (a) (1) provides in relevant part: "A person is guilty of assault in the first degree when . . . [w]ith intent to cause serious physical injury to another person, he causes such injury to such person . . . by means of a deadly weapon or a dangerous instrument . . . ." General Statutes § 53a-3 (6) defines "deadly weapon" as "any weapon, whether loaded or unloaded, from which a shot may be discharged . . . ." Thus, the state was required to prove that the defendant (1) intended to cause Turner serious physical injury and (2) caused such injury to her by means of a deadly weapon or dangerous instrument.

The defendant argues that the state's case rested largely on inconsistent and unreliable testimony of three witnesses—Turner, McFadden, and Zambrano. He argues that the trial testimony of Turner, McFadden, and Zambrano differed from statements that each had given to the police regarding the number of shots fired, whether the defendant left and then returned to the crime scene, whether the defendant ordered Turner onto her hands and knees rather than to put her hands behind her back, whether the defendant pulled Turner out of the car or ordered her to do so herself, whether McFadden alone received the check from the defendant and Zambrano rather than Turner and McFadden together receiving the check, and whether the defendant fired shots at Turner and then left or whether Turner and McFadden ran into the woods before the defendant fired a shot and only upon Turner and McFadden leaving the woods did the defendant fire the gun at Turner. The defendant further contends that, because of the inconsistencies in the evidence presented by the state, the state failed to present sufficient evidence to sustain his conviction.

The defendant claims that the evidence was insufficient because of inconsistencies between the trial testimony of Turner, McFadden, and Zambrano, on the one hand, and their police statements, on the other hand. Such inconsistencies do not undermine the sufficiency of the evidence but more aptly affect the credibility of the witnesses.[3] See, e.g., *State* v. *Franklin*, 115 Conn. App. 290, 292, 972 A.2d 741, cert. denied, 293 Conn. 929, 980 A.2d 915 (2009). Credibility determinations rest with the jury. "[E]vidence is not insufficient . . . because it is conflicting or inconsistent. . . . It is the [jury's] exclusive province to weigh the conflicting evidence and to determine the credibility of witnesses. . . . The [jury] can . . . decide what—all, none, or some—of a witness' testimony to accept or reject." (Internal quotation marks omitted.) *State* v. *Rodriguez*, 133 Conn. App. 721, 726, 36 A.3d 724 (2012), aff'd, 311 Conn. 80, 83 A.3d 595 (2014).

There was ample evidence from which the jury rea-

sonably could have found that the defendant caused serious physical injury to Turner by means of a deadly weapon and that he intended to cause such serious physical injury. Turner testified that the defendant pointed a silver revolver at her and that she pleaded for her life. She further testified that the defendant shot her on the top of her left hand and that the bullet exited near her wrist. She stated that the defendant also shot her under her right arm near her ribcage. Zambrano showed the police the location in a marina where the defendant had discarded the revolver, and the police recovered a .38 caliber stainless steel snub nose Smith & Wesson revolver from that location. Subsequently, a .38 caliber bullet was surgically removed from Turner's torso. The jury reasonably could have inferred from the defendant's conduct of pointing the revolver at Turner and pulling the trigger,[4] and from the resultant injury to Turner's wrist and torso, that the defendant intended to cause serious physical injury to her. See *State* v. *Papandrea*, 120 Conn. App. 224, 230, 991 A.2d 617 (2010) (intent may be inferred from conduct and jury may infer defendant intended natural consequences of actions), aff'd, 302 Conn. 340, 26 A.3d 75 (2011). Accordingly, there was sufficient evidence to support the defendant's conviction of assault in the first degree

## II

The defendant next claims that the trial court abused its discretion by admitting the names of his prior felony convictions into evidence.[5] We disagree.

At the close of the state's case, the defendant's attorney referred to an in-chambers discussion and objected to the state's proposed admission into evidence of the names of the defendant's prior felony convictions during the cross-examination of the defendant. The court noted that, pursuant to § 6.7 of the Connecticut Code of Evidence, evidence of a felony conviction may be admissible for the purpose of impeachment. The court reasoned that it would allow the felonies to be named because the names of three felonies provided more specific guidance as to the defendant's veracity. In the course of his direct examination, the defendant testified that, in March, 2009, he was convicted of two felonies arising from one incident and that, in 2012, he was convicted of a third felony. On cross-examination by the state, the defendant testified that he had been convicted of conspiracy to commit larceny in the second degree, conspiracy to commit robbery in the first degree, and criminal attempt to commit robbery in the first degree. He further testified that he was aware that, as a result of his felony convictions, he was not permitted to possess a firearm.

"It is well settled that evidence that a criminal defendant has been convicted of crimes on a prior occasion is not generally admissible. . . . There are, however, several well recognized exceptions to this rule, one of

which is that [a] criminal defendant who has previously been convicted of a crime carrying a term of imprisonment of more than one year may be impeached by the state if his credibility is in issue. . . . In its discretion a trial court may properly admit evidence of prior convictions provided that the prejudicial effect of such evidence does not far outweigh its probative value. . . . [Our Supreme Court] has identified three factors which determine whether a prior conviction may be admitted: (1) the extent of the prejudice likely to arise; (2) the significance of the commission of the particular crime in indicating untruthfulness; and (3) its remoteness in time. . . . A trial court's decision denying a motion to exclude a witness' prior record, offered to attack his credibility, will be upset only if the court abused its discretion. . . . Those three factors have been incorporated in [the Connecticut] [C]ode of [E]vidence. Conn. Code Evid. § 6-7 (a)." (Citation omitted; internal quotation marks omitted.) *State* v. *Ciccio*, 77 Conn. App. 368, 385–86, 823 A.2d 1233, cert. denied, 265 Conn. 905, 831 A.2d 251 (2003).

There is no doubt that if evidence of a felony conviction is otherwise admissible, the name of the crime is generally also admissible. See Conn. Code Evid. § 6-7 (c) ("[i]f, for purposes of impeaching the credibility of a witness, evidence is introduced that the witness has been convicted of a crime, the court shall limit the evidence *to the name of the crime* . . . except that . . . the court *may* exclude evidence of the name of the crime . . . ." [emphasis added]). As indicated in § 6-7, the court has discretion to admit the prior conviction as an unnamed felony. Factors to consider include whether the prior crime reflects directly on credibility and whether the prejudice inherent in the name of the crime outweighs the probative impeaching value. See *State* v. *Crumpton*, 202 Conn. 224, 232–33, 520 A.2d 226 (1987); *State* v. *Geyer*, 194 Conn. 1, 16, 480 A.2d 489 (1984).

"[I]n evaluating the separate ingredients to be weighed in the balancing process, there is no way to quantify them in mathematical terms. . . . Therefore, [t]he trial court has wide discretion in this balancing determination and every reasonable presumption should be given in favor of the correctness of the court's ruling . . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done. . . . The burden lies with the party objecting to the admission of evidence of prior convictions to demonstrate the prejudice that is likely to arise from its admission. . . . The test for determining whether evidence is unduly prejudicial is not whether it is damaging to the defendant but whether it will improperly arouse the emotions of the jury." (Citations omitted; internal quotation marks omitted.) *State* v. *Muhammad*, 91 Conn. App. 392, 397–98, 881 A.2d 468, cert. denied, 276 Conn. 922, 888 A.2d 90 (2005).

The defendant argues that the admission into evidence of the names of the three prior felony convictions was more prejudicial than probative, and that the court thus abused its discretion in allowing the names of the felonies to be admitted into evidence. He contends that the theory of his defense was that he did not intentionally pull the trigger, but, instead, Turner initiated a struggle with him over control of the revolver, which caused Turner to be shot. He further argues that evidence regarding the convictions did not provide a material benefit to the jury and misled the jury to believe that he was more likely to have committed the crimes at issue in the present case because he had committed three felonies in the past.

Assault in the first degree and carrying a pistol without a permit, the crimes alleged in this case, are not strikingly similar to the crimes of conspiracy to commit larceny in the second degree, conspiracy to commit robbery in the first degree, and attempt to commit robbery in the first degree, the names of the prior convictions with which the defendant's credibility was impeached. Indeed, the defendant acknowledges in his appellate brief that the prior convictions bore "no similarity" to the crimes for which he was charged. The dissimilar nature of the crimes charged, as compared to the nature of the prior convictions, minimized the chance that the jury would view the convictions as propensity evidence. Cf. *State* v. *Nardini*, 187 Conn. 513, 522, 447 A.2d 396 (1982) ("[w]here the prior crime is quite similar to the offense being tried, a high degree of prejudice is created and a strong showing of probative value would be necessary to warrant admissibility").

The crimes involving larceny and robbery[6] for which the defendant was convicted on prior occasions were significant in indicating untruthfulness. "[Our Supreme Court] has recognized that crimes involving larcenous intent imply a general disposition toward dishonesty or a tendency to make false statements. . . . [I]n common human experience acts of deceit, fraud, cheating, or stealing . . . are universally regarded as conduct which reflects on a [person's] honesty and integrity . . . ." (Internal quotation marks omitted.) *State* v. *Banks*, 58 Conn. App. 603, 616, 755 A.2d 279, cert. denied, 254 Conn. 923, 761 A.2d 755 (2000). "[C]rimes involving larcenous intent imply a general disposition toward dishonesty . . . . Convictions of this sort obviously bear heavily on the credibility of one who has been convicted of them. The probative value of such convictions, therefore, may often outweigh any prejudice engendered by their admission." (Citation omitted; internal quotation marks omitted.) *State* v. *Geyer*, 194 Conn. 1, 12, 480 A.2d 489 (1984).

The defendant argues that the naming of his prior convictions was of no material benefit to the jury.

Because the prior convictions related to untruthfulness, however, the names of the prior convictions were relevant to the jury's evaluation of the defendant's veracity. See *State* v. *Crumpton*, supra, 202 Conn. 233. The court, therefore, did not abuse its discretion in allowing into evidence the names of the prior convictions. "Although the probative value of evidence of his prior convictions is certainly damaging to [the defendant's] credibility, that does not necessarily impart an undue degree of prejudicial effect as well. . . . The test for determining whether evidence is unduly prejudicial is not whether it is damaging to the defendant but whether it will improperly arouse the emotions of the jury." (Citation omitted; emphasis omitted; internal quotation marks omitted.) *State* v. *Muhammad*, supra, 91 Conn. App. 398. We are not persuaded that the evidence of the prior convictions was likely to arouse the emotions of the jurors.

We conclude that the trial court did not abuse its discretion in admitting evidence of the names of the defendant's prior convictions involving larceny and robbery for the purpose of impeachment.

### III

The defendant last claims that the trial court abused its discretion by giving a supplemental charge to the jury in which it named the defendant's prior felony convictions after deliberations had begun, thus unduly highlighting the prior convictions. The defendant also argues that the court's supplemental charge unfairly prejudiced him by marshaling the evidence.[7] We disagree.

After the state rested, the defendant's attorney informed the court that the defendant decided to testify. Following closing arguments and outside the presence of the jury, the court invited comment from counsel on its draft jury charge, which had been sent to counsel by e-mail days earlier; the draft charge contained no instruction regarding the use of prior convictions. Later that day, the court instructed the jury, and the jury began deliberating. The next morning, the court informed counsel that it intended to supplement the jury charge by instructing the jury that it could consider the defendant's prior convictions only for the purpose of assessing the defendant's credibility. The defendant's attorney objected, arguing that the supplemental charge was prejudicial because it marshaled the evidence and because it would emphasize the prior convictions after deliberations had begun. The court stated that because the defendant's prior convictions were in evidence, it wanted to make clear to the jury that the prior convictions were to be used only for the purpose of assessing the defendant's credibility. The court did not want the jury to infer from the prior convictions that the defendant was likely to have committed the crimes charged. The court stated that the supplemental charge was "for

. . . the protection of the defendant . . . ."

The court then instructed the jury as follows: "I have one more page of a charge that I inadvertently did not give you yesterday, a charge meaning this is the law that you're to apply to the facts that you find, and I'm going to read that to you now. It's going to be—It is part of the charge. We literally are going to plug it into the charge you have in there, its going to page 20a, and it's as follows, and this is the law. Impeachment, prior convictions of a witness. Evidence that one of the witnesses, [the defendant], was previously convicted of a crime or crimes is only admissible on the question of the credibility of that witness, that is, the weight that you will give the witness' testimony. The witness' criminal record bears only on this witness' credibility and the one witness was [the defendant] and the convictions are as follows: conspiracy to commit larceny in the second degree, attempt to commit robbery in the first degree, conspiracy to commit robbery in the first degree. It is your duty to determine whether this witness is to be believed wholly or partly or not at all. You may consider the witness' prior convictions in weighing the credibility of this witness and give such weight to those facts that you decide is fair and reasonable in determining the credibility of this witness."

"The standard of review for claims of instructional impropriety is well established. [I]ndividual jury instructions should not be judged in artificial isolation, but must be viewed in the context of the overall charge. . . . The pertinent test is whether the charge, read in its entirety, fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . Thus, [t]he whole charge must be considered from the standpoint of its effect on the [jurors] in guiding them to the proper verdict . . . and not critically dissected in a microscopic search for possible error." (Internal quotation marks omitted.) *State* v. *Peeler*, 271 Conn. 338, 360–61, 857 A.2d 808 (2004), cert. denied, 546 U.S. 845, 126 S. Ct. 94, 163 L. Ed. 2d 110 (2005). "In evaluating the propriety of a supplemental charge, we must examine both the main and supplemental charge as a whole." *State* v. *Miller*, 36 Conn. App. 506, 514, 651 A.2d 1318, cert. denied, 232 Conn. 912, 654 A.2d 357 (1995).

Practice Book § 42-24 provides in relevant part that "[t]he judicial authority . . . upon its own motion . . . may recall the jury to the courtroom and give it additional instructions in order to . . . [i]nstruct the jury on any matter which should have been covered in the original instructions." The decision whether to add a supplemental instruction lies within the sound discretion of the court; *State* v. *Fletcher*, 10 Conn. App. 697, 703, 525 A.2d 535 (1987), aff'd, 207 Conn. 191, 540 A.2d 370 (1988); and the additional instruction, like any other instruction, is to be read in the context of the charge

as a whole. *State* v. *Wokoma*, 37 Conn. App. 35, 39, 656 A.2d 226, cert. denied, 233 Conn. 905, 657 A.2d 645 (1995).

The supplemental charge informed the jury of the proper use of evidence of the defendant's prior felony convictions. The court had admitted the evidence of the defendant's prior convictions for impeachment purposes only. Section 4-5 (a) of the Connecticut Code of Evidence provides that "[e]vidence of other crimes, wrongs or acts of a person is inadmissible to prove the bad character or criminal tendencies of that person." The main charge apparently had inadvertently omitted the instruction emphasizing the limited purpose for which this evidence could be used. The court's supplemental charge, however, properly instructed the jury that the defendant's prior convictions were not to be used as evidence that he committed the crimes charged but, rather, were only to be used in assessing his credibility. The supplemental charge protected the defendant from the jury's use of his prior convictions as evidence of his guilt of the current charged offenses; giving the charge, therefore, was well within the court's discretion.

Further, the court did not improperly marshal the evidence by naming the defendant's prior convictions.[8] The names of the three prior convictions were in evidence. The court's reference to them properly guided the jury to understand the limitations on how such evidence could be used and, viewed in context, was part of an instruction to protect the defendant against improper use of the evidence, not an instruction merely to highlight adverse evidence. Accordingly, the trial court did not abuse its discretion in giving its supplemental charge.

The judgments are affirmed.

In this opinion the other judges concurred.

[1] The jury found the defendant not guilty of attempt to commit assault in the first degree in violation of General Statutes §§ 53a-49 (a) (2) and 53a-59 (a) (1).

[2] The defendant filed two separate appeals. Pursuant to Practice Book § 61-7 (3), this court sua sponte ordered that the appeals in AC 37995 and AC 37997 be consolidated. The appeal from the violation of probation raises no independent issues.

[3] The defendant also argues that, according to his own testimony, Turner reached for the revolver, initiated a struggle during which the revolver fired a shot, and the defendant did not intend that Turner be shot. The existence of contrary testimony does not undermine the sufficiency of the evidence supporting the conviction. Credibility determinations are within the sole province of the jury. See *State* v. *Rodriguez*, 133 Conn. App. 721, 725–28, 36 A.3d 724 (2012), aff'd, 311 Conn. 80, 83 A.3d 595 (2014).

[4] There was testimony that a minimum of ten to twelve pounds of pressure was required to pull the trigger.

[5] The defendant's attorney objected at trial only to the naming of the three prior felony convictions. There was no objection to the admission of those convictions without naming them. We review only the preserved claim of evidentiary error. See, e.g., *State* v. *Francis D.*, 75 Conn. App. 1, 11, 815 A.2d 191, cert. denied, 263 Conn. 909, 819 A.2d 842 (2003).

[6] Larceny generally is an element of robbery. See, e.g., General Statutes § 53a-133.

[7] The defendant also argues that the court abused its discretion in reading

the supplemental charge without reading the entire charge again and inserting the additional language. The defendant did not raise this issue before the trial court, and we decline to review it. See, e.g., *State* v. *Francis D.*, 75 Conn. App. 1, 11, 815 A.2d 191, cert. denied, 263 Conn. 909, 819 A.2d 842 (2003).

[8] "A trial court has broad discretion to comment on the evidence adduced in a criminal trial. . . . A jury trial in which the judge is deprived of the right to comment on the evidence and to express his opinion as to the facts . . . is not the jury trial which we inherited. . . . A trial court often has not only the right, but also the duty to comment on the evidence. . . . The principal function of a jury charge is to assist the jury in applying the law correctly to the facts which they might find to be established . . . and therefore, we have stated that a charge must go beyond a bare statement of accurate legal principles to the extent of indicating to the jury the application of those principles to the facts claimed to have been proven. . . . The purpose of marshalling the evidence, a more elaborate manner of judicial commentary, is to provide a fair summary of the evidence, and nothing more; to attain that purpose, the [trial] judge must show strict impartiality." (Citations omitted; internal quotation marks omitted.) *State* v. *Hernandez*, 218 Conn. 458, 461–63, 590 A.2d 112 (1991).

In this case, the only "marshaling" was a recitation that the defendant had testified and that the named convictions had been introduced into evidence.

---