******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

STATE OF CONNECTICUT *v.* JACEK TARASIUK
(AC 41362)

Alvord, Prescott and Eveleigh, Js.

*Syllabus*

Convicted, after a jury trial, of the crimes of assault of public safety personnel and criminal trespass, the defendant appealed to this court. He claimed that the court improperly permitted the state to introduce evidence of a prior felony conviction of the defendant for criminal violation of restraining order for the purpose of impeaching the defendant's credibility. *Held* that although the trial court abused its discretion by admitting into evidence the defendant's prior felony conviction, as it had no bearing on his truthfulness and was more than ten years old, the defendant failed to demonstrate that the admission of that evidence constituted harmful error entitling him to a new trial; the state's case against the defendant ultimately did not turn on the defendant's credibility, the state offered proof of each essential element, including testimony from the police officer that while the defendant was resisting being seated in the police cruiser, the police officer was kicked by the defendant, who did not contest that testimony and denied only intentionally kicking the police officer, and the state was not required to prove an intent to physically harm the police officer by the defendant, who testified that the police officer was reasonably identifiable as a peace officer and that although he was too drunk that day to remember whether he was kicking his legs, he did resist being seating in the police cruiser and was thrashing around, and in light of those admissions, which supported a jury finding that the defendant intended to prevent the police officer from performing his duties, the jury reasonably could have found any ameliorative aspects of the defendant's testimony to be not credible and could have credited the police officer's version of the events, and, therefore, the improper admission of the prior felony conviction did not substantially affect the verdict.

Argued March 12—officially released August 27, 2019

*Procedural History*

Two part substitute information charging the defendant, in the first part, with the crimes of assault of public safety personnel, threatening in the second degree and criminal trespass in the first degree, and, in the second part, with having committed an offense while on release, brought to the Superior Court in the judicial district of New Britain, geographical area number fifteen, where the first part of the information was tried to the jury before *Keegan, J.*; verdict of guilty of assault of public safety personnel and criminal trespass in the first degree; thereafter, the second part of the information was tried to the jury; verdict and judgment of guilty, from which the defendant appealed to this court. *Affirmed.*

*S. Max Simmons*, assigned counsel, for the appellant (defendant).

*Linda F. Currie-Zeffiro*, assistant state's attorney, with whom, on the brief, were *Brian W. Preleski*, state's attorney, and *David Clifton*, assistant state's attorney, for the appellee (state).

*Opinion*

ALVORD, J. The defendant, Jacek Tarasiuk, appeals from the judgment of conviction, rendered following a jury trial, of one count of assault of public safety personnel in violation of General Statutes § 53a-167c (a) (1) and one count of criminal trespass in the first degree in violation of General Statutes § 53a-107 (a) (1).[1] On appeal, the defendant claims that the trial court abused its discretion by admitting into evidence the defendant's May 24, 2006 unnamed felony conviction for the limited purpose of impeaching the defendant's credibility. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On August 8, 2016, the defendant had been drinking alcohol in the parking lot of the Pulaski Democratic Club (club), a social, members only club. Raymond Szajkowski, the president of the club, confronted the defendant and told him that "he's trespassing and that he's not wanted on the property."

On September 22, 2016, the day at issue in this case, the defendant was unemployed and residing at the Friendship Center, a shelter in the City of New Britain. The defendant met his friend, Skawinski,[2] and the two began drinking between 8 and 8:30 a.m.[3] The two had spent the entire day drinking together, splitting a half gallon of vodka. By 5 or 6 p.m., the two had finished drinking the vodka and had ventured out to purchase more alcohol. The two walked down Grove Street and, eventually, arrived in front of the club. Posted on club property were "no trespassing" signs, written in both English and Polish.[4]

Once in front of the club, the defendant made a "beeline" toward Szajkowski as he exited his vehicle in the club parking lot. The defendant first asked Szajkowski why he was "harassing [him] and not allowing him to be on the property . . . ." Szajkowski informed the defendant that he was not welcome on the club's property and asked him to leave. The defendant appeared drunk to Szajkowski. The defendant, however, stated that he had engaged Szajkowski after "[Szajkowski] tried [to] drive over [him] in the parking lot." The defendant called the police to report the incident and awaited their arrival. After waiting some time, Szajkowski also contacted the police to verify whether the defendant had indeed made a complaint. Szajkowski was told that the defendant had made a complaint and that officers were on the way.

Two members of the New Britain Police Department, Officers Jakub Lonczak and Coleman,[5] responded to the reported disturbance fifteen to twenty minutes later. The defendant was in the club parking lot when the officers arrived. Officer Lonczak observed the defendant to be intoxicated. The defendant gave his account to Officer Lonczak but was told to "let it go, get out of

here, go.'' The defendant left the property.

While Officer Lonczak was with the defendant, Officer Coleman spoke with Szajkowski. Szajkowski told Officer Coleman that the defendant and Skawinski "approached his car, began yelling at him, inquiring why they were kicked out of the establishment earlier that year . . . ." Szajkowski made a trespassing complaint. After interviewing the defendant and Szajkowski, Officers Lonczak and Coleman determined that probable cause existed to arrest the defendant and Skawinski for trespassing.

By the time Officers Lonczak and Coleman determined that there was probable cause to arrest the defendant and Skawinski, they were across the street. The officers returned to their police cruiser, proceeded after the defendant and Skawinski in the cruiser, exited the vehicle and advised both individuals that they were under arrest for trespassing. The defendant was handcuffed without resistance by Officer Lonczak. Simultaneously, Officer Coleman was handcuffing Skawinski, who was not complying. After the defendant was handcuffed and seated on the ground, Officer Lonczak assisted Officer Coleman. At this time, the defendant began screaming profanities at the officers and claiming "police brutality." The officers immediately sought to place the defendant in the police cruiser to avoid "a bigger disturbance."

The defendant resisted being placed in the cruiser. The officers each took one of the defendant's legs to lift him into the cruiser. The defendant, with his rear on the seat, braced his back against the Plexiglas divider within the cruiser.[6] The defendant "began thrashing and kicking with his feet." The defendant kicked Officer Lonczak in the center of his chest trauma plate, causing him to take a few steps back. Officer Coleman struck the defendant's face to effectuate compliance. The defendant continued to thrash about and kick, eventually kicking Officer Lonczak's left thumb, jamming it. Officer Lonczak struck the defendant in his right torso, and the defendant became compliant. The officers were able to fully seat the defendant in the police cruiser and close the door. The officers transported the defendant to the police station. During the drive to the station, the defendant screamed profanities at the officers.[7]

On June 28, 2017, the defendant was charged in a substitute long form information with one count of assault of public safety personnel in violation of General Statutes § 53a-167c (a) (1), one count of threatening in the second degree in violation of General Statutes § 53a-62 (a) (2) and one count of criminal trespass in the first degree in violation of General Statutes § 53a-107 (a) (1). In a part B information, the defendant was charged with committing a crime while on release in violation of General Statutes § 53a-40b. The defendant pleaded not guilty to all counts in both the substitute long form

information and the part B information, and elected a jury trial.

At the defendant's trial on June 27, 2017, the defendant elected to testify in his own defense. Prior to his testimony, the state indicated its intention to offer evidence of the defendant's prior felony conviction from May 24, 2006, for criminal violation of a restraining order,[8] in order to impeach the defendant's credibility.[9] The sentence imposed for that conviction was three years of incarceration, execution suspended after nine months, followed by five years of probation. The state acknowledged that felony convictions that are more than ten years old are generally not admissible but argued that the rule is not hard and fast and that "we're only a couple of months beyond it at this point once you consider the nine month jail sentence." The defendant objected to the admission of the evidence, arguing "it's not relevant to this case and it's beyond the ten year period."

The court admitted the prior felony conviction into evidence for purposes of impeachment. The court stated that "the ten year rule is not a bright line but it's a suggestion. So based on all the information that I've heard on the timing of it, the court feels that it is relevant, it is a felony conviction, however, it must be unnamed and in accordance with [*State* v. *Geyer*, 194 Conn. 1, 16, 480 A.2d 489 (1984)]."

During his direct examination, the defendant testified that he had previously been convicted of a felony. On cross-examination, when the state asked about the prior felony conviction, the defendant responded, unsolicited, "[y]es, violation of protection of my wife . . . ." During closing argument, the state highlighted the defendant's prior felony conviction as a factor the jury could consider in assessing his credibility during its deliberations: "Again, consider the defendant's unique position in this case. I mean, first of all, he's a convicted felon. That's something you can assess when you're determining how credible he is." The defendant did not request, and the court did not provide, a contemporaneous limiting instruction to the jury regarding their consideration of the defendant's prior felony conviction during either direct examination or cross-examination. The court did provide a limiting instruction in its charge to the jury.[10]

On June 29, 2017, the jury found the defendant guilty of assault of public safety personnel and criminal trespass in the first degree. The jury acquitted the defendant of threatening in the second degree. After a separate jury trial on the part B information, the jury found that the defendant committed the crimes of which he had just been convicted while on release. The jury's finding that he had committed crimes while on release subjected him to a sentence enhancement pursuant to General Statutes § 53a-40b.

On July 10, 2017, the defendant filed a motion for a new trial pursuant to Practice Book § 42-53 (a), claiming that the court erred in admitting into evidence the defendant's prior felony conviction for impeachment purposes. The defendant argued that the "prior felony conviction, which was more than [ten] years old . . . was more prejudicial than probative." The court denied that motion in a memorandum of decision dated October 2, 2017. The court stated that under § 6-7 of the Connecticut Code of Evidence, remoteness is "one of the factors to be weighed by the trial court in exercising its discretion whether to admit a particular conviction for impeachment purposes." The court stated that "[t]he age of a conviction goes to its weight and not its admissibility," citing *State* v. *Robington*, 137 Conn. 140, 144–45, 75 A.2d 394 (1950), and that "[o]ur Supreme Court has never ruled that a felony conviction greater than ten years is an absolute bar to admissibility," citing *State* v. *Skakel*, 276 Conn. 633, 738–42, 888 A.2d 985, cert. denied, 549 U.S. 1030, 127 S. Ct. 578, 166 L. Ed. 2d 428 (2006). The court concluded that "[i]n light of the issue in the case upon which the conviction was permitted to be used, the fact that it was admitted in the sanitized version and the fact that the conviction was slightly over ten years, the court continues to find that the evidence was properly admitted."

The court rendered judgment in accordance with the jury verdict and imposed a total effective sentence of fifteen years of incarceration followed by five years of special parole. This appeal followed.

The defendant claims that the court abused its discretion by admitting into evidence his May 24, 2006 felony conviction for the purpose of impeaching his credibility as a witness. The defendant argues that the court admitted the over ten year old conviction without properly considering its potential prejudice to the defendant, the significance of the age of the conviction and how the prior conviction bears on the defendant's veracity. The defendant argues further that had the court undertaken the correct analysis, the court would not have admitted the prior conviction into evidence. The defendant claims that the court's error was not harmless: "The risk that the harm to the defendant's credibility created by the improperly admitted impeachment evidence sufficed to tip the jury's opinion in [Officer] Lonczak's favor was thus highly prejudicial to the defendant on a matter of the most central importance in the proceedings."

The state argues that the court did not abuse its discretion in admitting the evidence. Additionally, the state contends that even if it was improper to admit the prior conviction into evidence, the court's error was harmless because the defendant's credibility had already been impeached by other evidence. Moreover, the defendant's account of his arrest did not "meaning-

fully differ" from that of Officer Lonczak's. The defendant states that he had been drinking on September 22, and he could not remember if he kicked Officer Lonczak.

We conclude that the court abused its discretion by admitting into evidence the prior felony conviction of criminal violation of a restraining order because that prior conviction was greater than ten years old and was not probative of truth and veracity. We conclude, however, that the error was harmless.

We first set forth the applicable principles of law and our standard of review. "It is well settled that evidence that a criminal defendant has been convicted of crimes on a prior occasion is not generally admissible. . . . There are, however, several well recognized exceptions to this rule, one of which is that [a] criminal defendant who has previously been convicted of a crime carrying a term of imprisonment of more than one year may be impeached by the state if his credibility is in issue. . . . In its discretion a trial court may properly admit evidence of prior convictions provided that the prejudicial effect of such evidence does not far outweigh its probative value. . . . [Our Supreme Court] has identified three factors which determine whether a prior conviction may be admitted: (1) the extent of the prejudice likely to arise; (2) the significance of the commission of the particular crime in indicating untruthfulness; and (3) its remoteness in time. . . . A trial court's decision denying a motion to exclude a witness' prior record, offered to attack his credibility, will be upset only if the court abused its discretion. . . . Those three factors have been incorporated in [the Connecticut] [C]ode of [E]vidence. Conn. Code. Evid. § 6-7 (a)." (Internal quotation marks omitted.) *State* v. *Young*, 174 Conn. App. 760, 768–69, 166 A.3d 704, cert. denied, 327 Conn. 976, 174 A.3d 195 (2017).

"[U]nless a conviction had some special significance to untruthfulness, the fact that it [is] more than ten years old [will] most likely preclude its admission under our balancing test." (Emphasis omitted.) *Label Systems Corp.* v. *Aghamohammadi*, 270 Conn. 291, 309, 852 A.2d 703 (2004) (interpreting *State* v. *Nardini*, 187 Conn. 513, 526, 447 A.2d 396 [1982]). "[T]he danger of unfair prejudice is far greater when the accused, as opposed to other witnesses, testifies, because the jury may be prejudiced not merely on the question of credibility but also on the ultimate question of guilt or innocence." (Internal quotation marks omitted.) *State* v. *Cooper*, 227 Conn. 417, 435, 630 A.2d 1043 (1993). "With respect to the remoteness prong of the balancing test, we have endorsed a general guideline of ten years from conviction or release from confinement for that conviction, whichever is later, as an appropriate limitation on the use of a witness' prior conviction." *State* v. *Skakel*, supra, 276 Conn. 738–39. The ten year marker is not,

however, a rigid threshold. "That benchmark . . . is not an absolute bar to the use of a conviction that is more than ten years old, but, rather, serves merely as a guide to assist the trial judge in evaluating the conviction's remoteness." *State* v. *Askew*, 245 Conn. 351, 364–65, 716 A.2d 36 (1998). "[R]emoteness in time, like relevance of the crime to veracity, is a factor to be weighed by the trial court in exercising its discretion." *State* v. *Nardini*, supra, 526. Nevertheless, "[t]he probative value for credibility purposes of . . . [a conviction is] greatly diminished by the extended period of time which ha[s] elapsed since [its] occurrence." Id., 528.

Not all felony crimes bear equally on a defendant's veracity. "[Our Supreme Court] has recognized that crimes involving larcenous intent imply a general disposition toward dishonesty or a tendency to make false statements. . . . [I]n common human experience acts of deceit, fraud, cheating, or stealing . . . are universally regarded as conduct which reflects on a man's honesty and integrity . . . . [Furthermore] larceny, which is the underlying crime in any robbery, bears directly on the credibility of the witness-defendant." (Internal quotation marks omitted.) *State* v. *Banks*, 58 Conn. App. 603, 616, 755 A.2d 279, cert. denied, 254 Conn. 923, 761 A.2d 755 (2000). "[C]onvictions having some special significance upon the issue of veracity surmount the standard bar of ten years . . . ." (Internal quotation marks omitted.) *State* v. *Cooper*, supra, 227 Conn. 436.

The defendant's conviction of criminal violation of a restraining order resulted in a three year sentence of imprisonment, suspended after nine months. As that offense is a felony, it falls within one of the exceptions to the general rule that prohibits evidence of prior crimes. See *State* v. *Young*, supra, 174 Conn. App. 768. In overruling the defendant's objection to the admission of the prior felony conviction, the court stated: "Well, in the court's opinion, based upon case law, the ten year rule is not a bright line but it's a suggestion. So based on all the information that I've heard on the timing of it, the court feels that it is relevant, it is a felony conviction, however, it must be unnamed and in accordance with [*State* v. *Geyer*, supra, 194 Conn. 16]."[11]

The defendant's prior felony conviction of criminal violation of a restraining order is not one of deceit, fraud, cheating, or stealing. The criminal violation is not larcenous. See *State* v. *Banks*, supra, 58 Conn. App. 616. As such, the prior felony conviction has no particular bearing on the defendant's truthfulness.[12] Because the defendant's prior felony conviction was more than ten years old when offered by the state and has no bearing on his veracity, it was an abuse of the court's discretion to admit the prior felony conviction into evidence.

Our conclusion that the court erred in admitting the

defendant's prior felony conviction into evidence does not end our analysis. The defendant concedes that the court's error is nonconstitutional. For the defendant to be entitled to a new trial, it is incumbent on the defendant to show that the trial court's evidentiary error was harmful. *State* v. *Clark*, 137 Conn. App. 203, 211, 48 A.3d 135 (2012), aff'd, 314 Conn. 511, 103 A.3d 507 (2014). "[A] nonconstitutional error is harmless when an appellate court has a fair assurance that the error did not substantially affect the verdict." (Internal quotation marks omitted.) *State* v. *Sawyer*, 279 Conn. 331, 357, 904 A.2d 101 (2006), overruled in part on other grounds by *State* v. *DeJesus*, 288 Conn. 418, 953 A.2d 45 (2008).

The defendant contends that, because there was no dispute as to whether Officer Lonczak was a readily identifiable police officer in the performance of his duties, the state's ability to convict the defendant of violating General Statutes § 53a-167c (a) (1) hinged on whether the defendant kicked Officer Lonczak to cause physical injury. The defendant maintains that he and Officer Lonczak gave conflicting testimony as to the kicking, and neither of their accounts were corroborated. Thus, the defendant argues, the prior conviction's admission into evidence tipped the scales too favorably in the state's favor, which was "highly prejudicial" to the defendant.[13]

The state asserts that, although there was no evidence to corroborate Officer Lonczak's testimony that the defendant kicked him, the defendant's testimony was ambiguous. Pointing to the defendant's concession that he resisted arrest and was "thrashing around" while the officers attempted to seat him in the cruiser, the state argues that the defendant's testimony did not deviate meaningfully from Officer Lonczak's. The state also emphasized that the defendant was drunk when arrested, affecting his recollection of the events, which was reflected in his testimony.

We find that there is fair assurance that the jury verdict was not substantially affected by the admission of the prior conviction into evidence. To convict the defendant of assault of public safety personnel under General Statutes § 53a-167c (a) (1), the state was required to prove "(1) intent to prevent a reasonably identifiable peace officer from performing his duties; (2) the infliction of physical injury to the peace officer; and (3) the victim must be a peace officer." (Citation omitted; internal quotation marks omitted.) *State* v. *Turner*, 91 Conn. App. 17, 22, 879 A.2d 471, cert. denied, 276 Conn. 910, 886 A.2d 424 (2005). The state was not required to show that the defendant had intended to kick Officer Lonczak or that he intended to cause him physical injury. See id.

The essential elements that the state was required to prove ultimately did not turn on the defendant's credibility. Instead, the state offered proof of each

essential element and the defendant did not seriously contest that proof. First, the defendant could not remember whether he was kicking his legs, but admitted to resisting being seated in the police cruiser and "thrashing around."[14] The defendant's admission supports a jury finding that the defendant intended to prevent Officer Lonczak from performing his duties. Second, Officer Lonczak testified that in the course of the defendant resisting being seated in the police cruiser, the defendant kicked Officer Lonczak and jammed his thumb. The defendant did not deny kicking Officer Lonczak, the defendant denied only *intentionally* kicking Officer Lonczak.[15] Third, the defendant admitted on cross-examination that Officer Lonczak was a reasonably identifiable peace officer.

Furthermore, the defendant testified that he was too drunk to remember key events from that day, such as cursing at the officers during the transport to the police station.[16] In light of this admission, the jury reasonably could have found any ameliorative aspects of the defendant's testimony to be not credible and could have credited Officer Lonczak's version of events. Thus, the strength of the state's proof on each of the essential elements of the offense, not the defendant's impeachment by his prior felony conviction, leaves us unpersuaded that the improper admission of his felony conviction substantially affected the verdict. Accordingly, the defendant has not satisfied his burden of demonstrating harmful error.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The defendant was acquitted of one count of threatening in the second degree in violation of General Statutes § 53a-62 (a) (2). After a separate jury trial on a part B information, he was found to have committed a crime while on release, which subjected him to a sentence enhancement pursuant to General Statutes § 53a-40b.

[2] Skawinski's first name could not be found within the record.

[3] According to the defendant, those staying at the Friendship Center are not permitted to remain on-site during the day. The defendant left the center and was joined by Skawinski in some bushes adjacent to train tracks in New Britain. The two commenced drinking there.

[4] The defendant was born in Poland and has resided in Connecticut for the past thirteen years. English is his second language.

[5] Officer Coleman's first name could not be found within the record.

[6] The police cruiser contains a "Plexiglas wall surrounding the seat [in the rear] so individuals can be sat in that little compartment, but the other side is open for officers to place other items that can be used for [their] duty."

[7] The defendant spoke in both English and Polish. Officer Lonczak, who was born in Poland and raised there until age ten, understood all of what the defendant uttered.

[8] The record does not provide the specific statute violated by the defendant for his prior felony conviction. The state referred to the defendant's prior felony conviction as a criminal violation of a restraining order. The defendant did not contest the state's characterization.

[9] The state indicated its intention to offer the defendant's prior felony conviction into evidence during an in-chambers discussion, which was later repeated on the record.

[10] The court instructed: "In this case, evidence was introduced to show that in 2006 the defendant was convicted of a felony, which is any crime for which a person may be incarcerated for more than one year. Evidence of a commission of a crime other than the one charged is not admissible

to prove the guilt of the defendant in this case. The commission of another crime by the defendant has been admitted into evidence for the sole purpose of affecting his credibility. You must weigh the testimony and consider it along with all the other evidence in the case. You may consider the conviction of the defendant only as it bears upon his credibility and you should determine that credibility upon the . . . same consideration as those given to any other witness."

[11] The defendant's precise date of release for his May 24, 2006 conviction is not clear from the record. The parties do agree, however, that he was released more than ten years prior to the trial in the present case.

[12] Even though the record does not contain the specific statute that was violated, the conduct necessary to be convicted of violating a restraining order does not speak to truthfulness.

[13] The defendant also appealed from his criminal trespass conviction, but failed to brief any argument that the admission of the felony conviction affected the jury's verdict on the trespassing charge. Accordingly, we deem any argument that the court's error was harmful to be abandoned as to the criminal trespass conviction.

[14] During cross-examination by the prosecutor, the defendant testified as follows:

"Q. So you just don't remember whether you were kicking your legs or not, but you were thrashing around.

"A. Yes."

\* \* \*

"Q. You're doing everything you can to . . . stop them from getting you in that car.

"A. I'm trying resisting or whatever they call it, yeah.

"Q. And you don't remember kicking the officer.

"A. No.

\* \* \*

"Q. Okay. And you're still thrashing around. You're still kicking those legs.

"A. I don't know."

[15] During his direct examination by defense counsel, the defendant testified as follows:

"Q. Okay. Did you ever intentionally kick either of these gentlemen?

"A. No."

[16] During re-direct examination, the defendant admitted that he was drunk at the time of arrest and did not remember that he used profane language toward the officers while in the cruiser on the drive to the station:

"Q. You don't know exactly what you said that day because you were . . . drunk. Right?

"A. Yes."