******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

L. L. *v.* M. B.*
(AC 45141)

Alvord, Seeley and Sheldon, Js.

*Syllabus*

The plaintiff appealed from the judgment of the trial court dismissing her
application filed pursuant to statute (§ 46b-15) on behalf of her minor
daughter for a domestic violence restraining order against the defendant.
At the time of the hearing on the application, the parties were seniors
attending the same high school. Evidence submitted at the hearing
showed that the parties last dated for a short period when they were
sophomores, two years prior. In dismissing the plaintiff's application,
the court found that the relationship between the parties did not meet
the requirement for relief from abuse in accordance with § 46b-15 (a),
which requires that the applicant be a family or household member as
defined in the applicable statute (§ 46b-38a (2)). The court concluded
that the relationship between the parties did satisfy the requirement of
§ 46b-38a (2) (F), namely, "persons in, or who have recently been in, a
dating relationship." On the plaintiff's appeal to this court, *held*:

1. The defendant could not prevail on his claim that the plaintiff's appeal
   should have been dismissed as moot because practical relief could not
   be afforded to the plaintiff: this court concluded that, if it were to
   determine that the trial court improperly determined that the plaintiff
   did not satisfy the statutory requirement of being a family or household
   member, relief in the form of a new hearing would be available to the
   plaintiff, which was sufficient to demonstrate that a successful appeal
   would benefit her; moreover, the defendant's proposed grounds for a
   determination of mootness, that the parties would no longer be in the
   same school by the time the appeal was heard and that the events that
   led to the filing of the application would be so remote in time that there
   would be no continuing threat of present physical pain or injury, instead
   reflected arguments as to the merits of what would be decided at a
   potential new hearing, the outcome of which was undetermined.

2. The trial court did not abuse its discretion in concluding, based on the
   facts presented, that the plaintiff did not meet the definition of a family
   or household member as required for relief under § 46b-15, as the parties
   did not have a recent dating relationship: the court held a full evidentiary
   hearing on the application, during which both parties testified and had
   the opportunity to proffer evidence, the court found that the parties
   last had dated for a short period when the parties, now seniors, were
   sophomores, and that such dating had ceased almost two years prior
   to the filing of the application, and the plaintiff did not direct this court's
   attention to any factual findings of the trial court or any evidence in
   the record that would suggest that the court could not have reasonably
   concluded as it did based on the facts presented; moreover, the term
   "recently" as set forth in § 46b-38a (2) (F) was interpreted in conformity
   with commonly approved definitions of the term, and this court was
   satisfied that the plain meaning of the statute did not yield an unworkable
   or absurd result, such that the plaintiff's asserted considerations under
   the guise of absurd results were instead more appropriately considera-
   tions of broader public policy that typically follow a determination of
   textual ambiguity; furthermore, the trial court's determination that the
   plaintiff's daughter did not fall within the definition of a family or house-
   hold member did not implicate the subject matter jurisdiction of the
   court, and, accordingly, the court should have denied rather than dis-
   missed the application.

Argued October 27—officially released November 29, 2022

*Procedural History*

Application for a domestic violence restraining order,
brought to the Superior Court in the judicial district of
Stamford-Norwalk, where the court, *McLaughlin, J.*,
rendered judgment dismissing the application, from

which the plaintiff appealed to this court. *Improper form of judgment; reversed; judgment directed.*

*Alexander J. Cuda,* for the appellant (plaintiff).

*Philip Russell,* with whom, on the brief, was *Catherine Keenan,* for the appellee (defendant).

*Opinion*

ALVORD, J. The plaintiff, L. L., on behalf of her minor daughter, N. R.,[1] appeals from the judgment of the trial court dismissing her application for a domestic violence restraining order pursuant to General Statutes (Rev. to 2021) § 46b-15, as amended by Public Acts 2021, No. 21-78.[2] On appeal, the plaintiff claims that the trial court improperly dismissed her application on the basis that she was not eligible for relief because she did not fall within the definition of "[f]amily or household member" as set forth in General Statutes § 46b-38a (2).[3] We reject the plaintiff's claim that the court improperly determined that she did not fall within the definition of family or household member but conclude that the form of the judgment is improper and, therefore, remand this case with direction to deny the plaintiff's application.

The following facts and procedural background are relevant to the plaintiff's claim. On October 1, 2021, the plaintiff filed an application for relief from abuse pursuant to § 46b-15, seeking a restraining order against the defendant, M. B. On that same day, the court, *Kowalski, J.*, issued an ex parte restraining order against the defendant and scheduled a hearing for October 14, 2021. On October 14, the parties appeared before the court, *McLaughlin, J.*, and jointly requested that the matter be continued on the grounds that a motion to seal the courtroom had been filed and the parties were awaiting documents that had been subpoenaed. The court continued the matter until October 28, 2021, and ordered, without objection by the defendant's counsel, that the restraining order remain in place until that date.

The hearing on the restraining order application was held over two dates, October 28 and November 12, 2021. The court heard the testimony of the plaintiff and the defendant, who were seniors attending the same high school. The court also heard the testimony of Kristina Colmenares, the assistant principal of the high school; the plaintiff's mother; and a mutual friend of the parties, who was called by the defendant. The parties also entered exhibits into evidence.

At the conclusion of the hearing, the court stated in relevant part: "The court found this case very troubling, but I note that the question before me is a limited one, which is under [§] 46b-15 of our statutes, whether or not, as we sit here together [the plaintiff] has been subjected to a continuous threat of present physical pain or injury, stalking or a pattern of threatening from [the defendant]. If [the defendant] satisfies the definition of family or household member. Family or household member, under our laws, the relevant part, is persons who have recently been in a dating relationship.

\* \* \*

"Here, the evidence to the court establishes that, at best, these parties had a dating relationship in 2019,

when they were sophomores. Prior to that point in time, was when they were in eighth grade.

"So, from the court and the evidence, the court finds that the parties do not satisfy the family or household member portion of the statute, which requires a recent dating relationship."

On November 15, 2021, the court issued a written order dismissing the plaintiff's application. The order stated: "Based on a preponderance of the credible evidence, the parties last dated for a short period in 2019. Thereafter, the parties interacted socially but were not dating. [Section] 46b-15 provides for the filing of an application for relief from abuse under specific circumstances. The statute, in relevant part, requires the parties to be in an existing dating relationship or to have recently been in a dating relationship. General Statutes § 46b-38a (2) (F). Here, the relationship between the parties does not satisfy the requirement for relief from abuse in accordance with . . . § 46b-15 (a) because it ended almost two years prior to the filing of the application for relief from abuse. As such, this matter is dismissed." This appeal followed.

Before addressing the merits of the plaintiff's appeal, we turn to the defendant's contention that the appeal should be dismissed as moot. First, he represents that "the events immediately preceding the plaintiff's filing of the application . . . occurred on a school bus and in school." Because the parties were seniors in high school for the 2021-2022 academic year, he contends that, "[b]y the time this appeal is heard, the parties will no longer be in the same school and no practical relief will be available." Second, he argues that "by the time this appeal is heard, the events leading up to the filing of the application . . . will be remote in time and there is no evidence of a continuing threat of present physical pain or physical injury. Thus, [the] plaintiff cannot be said to have been subjected to a continuous threat of present physical pain or physical injury by the defendant, as required by § 46b-15 (a)." We disagree with the defendant.

"Mootness is a question of justiciability that must be determined as a threshold matter because it implicates [this] court's subject matter jurisdiction . . . ." (Internal quotation marks omitted.) *Putman* v. *Kennedy*, 279 Conn. 162, 168, 900 A.2d 1256 (2006). "[A]n actual controversy must exist not only at the time the appeal is taken, but also throughout the pendency of the appeal. . . . When, during the pendency of an appeal, events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits, a case has become moot. . . . In determining mootness, the dispositive question is whether a successful appeal would benefit the plaintiff or defendant in any way." (Citation omitted; internal quotation marks omitted.) *Wendy V.* v. *Santiago*, 319 Conn. 540, 544–45,

125 A.3d 983 (2015).

Applying this standard, we determine that the present appeal is not moot because practical relief can be afforded to the plaintiff. The question presented by the plaintiff's appeal is whether the court properly determined that she was not eligible to obtain a domestic violence restraining order because she did not fall within the definition of "[f]amily or household member" as set forth in § 46b-38a (2). Were this court to determine that the trial court improperly determined that she did not satisfy that statutory requirement, relief in the form of a new hearing[4] would be available to the plaintiff. That potential relief is sufficient to demonstrate that a successful appeal would benefit the plaintiff. The defendant's two proposed grounds for a determination of mootness do not implicate mootness but instead reflect arguments as to the merits of what would be decided at the potential new hearing, the outcome of which is undetermined. Because this court could grant practical relief to the plaintiff, we conclude that her appeal is not moot.

Our conclusion that the present appeal is not moot is supported by our Supreme Court's decision in *Wendy V.* v. *Santiago*, supra, 319 Conn. 540. In that case, the plaintiff filed an ex parte restraining order application, and the court denied the application as well as the plaintiff's request for a full hearing on the application. Id., 542–43. The plaintiff appealed and requested as relief a hearing on her application. Id., 543. While her appeal was pending, the trial court held a hearing on her original application, and a second application she had filed, and then denied the applications. Id., 544. On appeal, our Supreme Court concluded that the fact that the trial court had held a hearing on the plaintiff's applications had rendered the plaintiff's appeals moot. Id.

Our Supreme Court then turned to the "capable of repetition, yet evading review" exception to the mootness doctrine. Id., 545. The first requirement to qualify under the exception is that "the challenged action, or the effect of the challenged action, by its very nature must be of a limited duration so that there is a strong likelihood that the substantial majority of cases raising a question about its validity will become moot before appellate litigation can be concluded." (Internal quotation marks omitted.) Id. Our Supreme Court determined that the plaintiff's case failed to meet the first prong, explaining that "[t]he effect of the challenged action, namely, the denial of a hearing after an application under § 46b-15, is not, by its very nature, of limited duration. Rather, the effects of a denied hearing generally will persist indefinitely. Therefore, in cases in which a hearing is denied, the case would not become moot before appellate litigation that ensues can be concluded. Anomalously, this case became moot only because the trial court ultimately *did* provide the hear-

ing that the plaintiff had requested." (Emphasis in original; footnote omitted.) Id., 546–47. In a footnote, the court rejected the plaintiff's contention that the effect of the denial of a hearing is of limited duration, explaining that, "[u]nlike the effect of an order granting a restraining order, however, which generally expires after one year, the effect of the denial of such an order continues indefinitely." Id., 547 n.7.

Although the relevant analysis in *Wendy V.* pertained to the "capable of repetition, yet evading review" exception, and the case uniquely involved the denial of a hearing, the discussion contained therein further supports our conclusion that the present appeal is not moot. Our Supreme Court recognized that in cases in which a hearing is denied, the case would not become moot before appellate litigation could be concluded and further recognized that the effect of the denial of an application is not of limited duration. Id. The guidance from *Wendy V.*, although pertaining to the denial of a hearing and not the denial of an application after a hearing, is instructive in our analysis with respect to mootness.

Having concluded that this appeal is not moot, we turn to the plaintiff's claim that the trial court improperly dismissed her application on the basis that she was not eligible for relief because she did not fall within the definition of "[f]amily or household member" as set forth in § 46b-38a (2). Specifically, she contends that she and the defendant are included within the category of "persons . . . who have recently been in, a dating relationship." General Statutes § 46b-38a (2) (F). The defendant responds, inter alia, that "[t]he trial court reasonably concluded, based on the facts presented, that the parties did not have a recent dating relationship." We agree with the defendant.

We first set forth our standard of review. "[T]he standard of review in family matters is well settled. An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Our deferential standard of review, however, does not extend to the court's interpretation of and application of the law to the facts. It is axiomatic that a matter of law is

entitled to plenary review on appeal. . . .

"To the extent that the defendant's claims raise issues of statutory interpretation, we note that [i]ssues of statutory construction raise questions of law, over which we exercise plenary review. . . . When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . General Statutes § 1-2z directs this court to first consider the text of the statute and its relationship to other statutes to determine its meaning. If, after such consideration, the meaning is plain and unambiguous and does not yield absurd or unworkable results, we shall not consider extratextual evidence of the meaning of the statute. . . . Only if we determine that the statute is not plain and unambiguous or yields absurd or unworkable results may we consider extratextual evidence of its meaning such as the legislative history and circumstances surrounding its enactment . . . the legislative policy it was designed to implement . . . its relationship to existing legislation and common law principles governing the same general subject matter . . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation. . . . We presume that the legislature did not intend to enact meaningless provisions. . . . [S]tatutes must be construed, if possible, such that no clause, sentence or word shall be superfluous, void or insignificant . . . .

"Furthermore, [i]n the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language; and technical words and phrases, and such as have acquired a peculiar and appropriate meaning in the law, shall be construed and understood accordingly. . . . If a statute or regulation does not sufficiently define a term, it is appropriate to look to the common understanding of the term as expressed in a dictionary." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Princess Q. H.* v. *Robert H.*, 150 Conn. App. 105, 111–13, 89 A.3d 896 (2014).

We begin our analysis with the language of § 46b-15 (a), which governs this case. It provides in relevant part: "Any family or household member, as defined in section 46b-38a, who is the victim of domestic violence, as defined in section 46b-1, by another family or household member may make an application to the Superior Court for relief under this section. . . ." General Statutes (Rev. to 2021) § 46b-15 (a), as amended by Public Acts 2021, No. 21-78, § 2. General Statutes (Rev. to 2021) § 46b-1 (b), as amended by Public Acts 2021, No. 21-78, § 1, defines "domestic violence" in relevant part as:

"(1) A continuous threat of present physical pain or physical injury against a family or household member, as defined in section 46b-38a; (2) stalking, including, but not limited to, stalking as described in section 53a-181d, of such family or household member; (3) a pattern of threatening, including, but not limited to, a pattern of threatening as described in section 53a-62, of such family or household member or a third party that intimidates such family or household member; or (4) coercive control of such family or household member, which is a pattern of behavior that in purpose or effect unreasonably interferes with a person's free will and personal liberty. . . ."[5] Section 46b-38a (2) defines a "[f]amily or household member" to include, among other categories of persons, "persons in, or who have recently been in, a dating relationship."

Because the word "recently" is not defined in § 46b-38a (2), we begin by looking to the dictionary definition of the word "recently" in order to understand its ordinary meaning. See, e.g., *Seramonte Associates, LLC* v. *Hamden*, 345 Conn. 76, 84, 282 A.3d 1253 (2022); see also General Statutes § 1-1 (a) ("[i]n the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language; and technical words and phrases, and such as have acquired a peculiar and appropriate meaning in the law, shall be construed and understood accordingly").

We look to definitions contemporaneous with the statute's amendment in 1999, which added subsection (2) (F). See Public Acts 1999, No. 99-186. Dictionaries consistently have defined the relevant term from at least 1985 through 2014. "[R]ecently" is defined as "during a recent period of time," and "recent" is defined as "of or relating to a time not long past" and "having lately come into existence." Webster's Ninth New Collegiate Dictionary (1985) p. 982; see also Merriam-Webster's Collegiate Dictionary (11th Ed. 2014) p. 1038 (providing same definitions).[6] Ballentine's Law Dictionary concordantly defines "recently" as "[l]ately" and "recent" as "[n]ew or fairly new," "[c]haracterizing the period of time immediately preceding the present moment." Ballentine's Law Dictionary (3d Ed. 1969) p. 1065. We interpret the statute in conformity with these commonly approved definitions, and we are satisfied that the plain meaning of the statute does not yield an unworkable or absurd result.[7] See *Princess Q. H.* v. *Robert H.*, supra, 150 Conn. App. 115.

In so construing the statute, we are mindful that the legislature added the limiting term "recently," expressly specifying that, in the context of former dating partners, the protections of § 46b-15 extend only to "persons . . . who have *recently* been in, a dating relationship." (Emphasis added.) General Statutes § 46b-38a (2) (F). Had the legislature intended to extend the reach of § 46b-15 to parties who had been in a dating relationship

at any time, it would have used that broader language.[8] See *Perry* v. *Perry*, 312 Conn. 600, 624, 95 A.3d 500 (2014) (noting "well settled principle of statutory construction that the legislature knows how to convey its intent expressly . . . or to use broader or limiting terms when it chooses to do so" (citation omitted; internal quotation marks omitted)).

In accordance with § 1-2z, we continue our analysis by looking to the relationship of the statute to other statutes. "There are a number of statutory provisions granting the court the authority to issue protective or restraining orders. See, e.g., General Statutes § 46b-15 (family violence restraining orders); General Statutes § 46b-16a (civil protection orders); General Statutes § 46b-38c (family violence protective orders); General Statutes § 53a-40e (standing criminal protective orders);[9] General Statutes § 54-1k (criminal protective orders); General Statutes § 54-82q (temporary restraining order regarding witnesses); General Statutes § 54-82r (protective orders for witnesses). Each provision contains its own set of specific requirements and procedures." (Footnote added.) *S. A.* v. *D. G.*, 198 Conn. App. 170, 186, 232 A.3d 1110 (2020).

As the plaintiff recognizes in her brief, with respect to the categories of relationships set forth in § 46b-38a, only the former dating partner category contains a time limitation. The definition of "[f]amily or household member" includes "any of the following persons, regardless of the age of such person: (A) Spouses or former spouses; (B) parents or their children; (C) persons related by blood or marriage; (D) persons other than those persons described in subparagraph (C) of this subdivision presently residing together or who have resided together; (E) persons who have a child in common regardless of whether they are or have been married or have lived together at any time; and (F) persons in, or who have recently been in, a dating relationship." General Statutes § 46b-38a (2). We cannot ignore the legislature's addition of the limiting word "recently" in the context of persons who have been in a dating relationship, when the legislature did not include such a limitation on the remaining categories of relationships. See *Lopa* v. *Brinker International, Inc.*, 296 Conn. 426, 433, 994 A.2d 1265 (2010) ("[b]ecause [e]very word and phrase [of a statute] is presumed to have meaning . . . [a statute] must be construed, if possible, such that no clause, sentence or word shall be superfluous, void or insignificant" (internal quotation marks omitted)).

We next turn to a consideration of whether the court properly determined that the plaintiff did not fall within the definition of "[f]amily or household member" because the parties were not "persons . . . who have recently been in, a dating relationship." General Statutes § 46b-38a (2) (F). The plaintiff argues that "the

connection between the parties as recent ex-boyfriend/girlfriend remains intact given the factual context and the ongoing actions of the defendant arising out of that relationship, not to mention their continuing proximity in the same high school. The underlying emotions which drive domestic violence remain in play unabated, with the parties still in the same high school and overlapping social circles." The plaintiff maintains that the COVID-19 pandemic "create[d] an artificial social buffer" during much of the intervening time, and states that the "resumption of in-school activity gave a renewed opportunity for the defendant to continue his pattern of inappropriate conduct which relates back to the dating relationship . . . ." The defendant contends that, "[w]hen looking at the issue of whether a dating relationship was 'recent' in this case, the trial court was well within [its] discretion to find that a dating relationship which occurred two years prior to the filing of the application was not 'recent.' "

Before making its determination, the court held a full evidentiary hearing on the application, during which both parties testified and had the opportunity to proffer evidence. Considering all of the evidence before it, the court found that the parties last had dated "for a short period in 2019" when the parties, now seniors, were sophomores, and that such dating had ceased almost "two years prior to the filing of the application . . . ." The plaintiff does not contest the trial court's findings, which are supported by the testimony of the plaintiff that the parties last had dated for "[a] month" in 2019, when the parties were sophomores in high school. In conducting this fact sensitive inquiry, the court appropriately considered that the relationship, the duration of which the court described as "short," had ended almost two years prior to the filing of the application.[10] The plaintiff has not directed our attention to any factual findings of the court or any evidence in the record that would suggest that the court could not have reasonably concluded as it did based on the facts presented.[11] See *Princess Q. H.* v. *Robert H.*, supra, 150 Conn. App. 111. Accordingly, we conclude that the court did not abuse its discretion in determining that the month long, two year old relationship was not recent.

The plaintiff raises, among other concerns,[12] potential uncertainty an applicant may face in determining which type of protective or restraining order the applicant should seek. Specifically, she notes that § 46b-16a authorizes the court to grant a civil protective order, and that statute does not contain a relationship requirement. Section 46b-16a (a) does specify, however, that relief under that section is only available to a plaintiff who "does not qualify to seek relief under section 46b-15."[13] The plaintiff questions: "If an applicant has previously dated the respondent, how is the applicant to know whether that relationship is recent or not? If the applicant were to file pursuant to [§] 46b-16a, if the relation-

ship were considered recent it could very well disqualify the applicant from relief under [§] 46b-16a." She additionally raises a concern that, in the case of a former dating partner continuing a pattern of conduct over a period of years, the plaintiff "should not be penalized [for trying] other alternatives" before seeking a restraining order.

The plaintiff asserts these and other considerations; see footnote 12 of this opinion;[14] under the guise of "absurd results" illustrated by a determination like that made in this case that a period of almost two years was not recent. We disagree that the concerns identified by the plaintiff demonstrate "absurd or unworkable" results, and we instead view the plaintiff's arguments as more appropriately constituting the considerations of broader public policy that typically follow a determination of textual ambiguity. The argument that a better public policy, in the plaintiff's view, exists does not mean that the plain and unambiguous language of the statute yields absurd results. "[I]t is the legislature, and not [our courts], that is responsible for formulating and implementing public policy. . . . The legislature speaks on matters of public policy through legislative enactments and through the promulgation of regulations by state agencies as authorized by statute. . . . When there is no ambiguity in the legislative commandment, this court cannot, in the interest of public policy, engraft amendments onto the statutory language." (Citations omitted; internal quotation marks omitted.) *Hasychak* v. *Zoning Board of Appeals*, 296 Conn. 434, 441 n.8, 994 A.2d 1270 (2010); see also *Seramonte Associates*, *LLC* v. *Hamden*, supra, 345 Conn. 91 n.11 (noting that "the question of whether the plaintiff's reading of the relevant statutory text 'yield[s] absurd or unworkable results' is analytically distinct from the examination of extratextual sources, such as expressions of legislative intent and considerations of broader public policy, that typically follows a determination of textual ambiguity").

Last, we note that the trial court's determination that the plaintiff did not fall within the definition of "[f]amily or household member" as set forth in § 46b-38a (2), did not implicate the subject matter jurisdiction of the court. Accordingly, the trial court should have denied rather than dismissed the application.[15] See *Board of Education* v. *Commission on Human Rights & Opportunities*, 344 Conn. 603, 633, 280 A.3d 424 (2022) ("Once it is determined that a tribunal has authority or competence to decide the class of cases to which the action belongs, the issue of subject matter jurisdiction is resolved in favor of entertaining the action. . . . [T]he question of whether the action belongs to the class of cases that the tribunal has authority to decide is [s]eparate and distinct from . . . the question of whether a [tribunal] . . . properly exercises its statutory authority to act." (Citation omitted; internal quota-

tion marks omitted.)); see also *State* v. *Clark*, 137 Conn. App. 203, 215, 48 A.3d 135 (2012) (holding that trial court lacked statutory authority, under § 53a-40e, to issue standing criminal restraining order where victim and defendant were not family or household members with one another), aff'd, 314 Conn. 511, 103 A.3d 507 (2014).

The form of the judgment is improper, the judgment dismissing the plaintiff's application is reversed and the case is remanded with direction to render judgment denying the plaintiff's application.

In this opinion the other judges concurred.

* In accordance with federal law; see 18 U.S.C. § 2265 (d) (3) (2018), as amended by the Violence Against Women Act Reauthorization Act of 2022, Pub. L. No. 117-103, § 106, 136 Stat. 49; we decline to identify any person protected or sought to be protected under a protection order, protective order, or a restraining order that was issued or applied for, or others through whom that party's identity may be ascertained.

[1] In the interest of simplicity, we refer to N. R. as the plaintiff in this opinion.

[2] All references herein to § 46b-15 are to the 2021 revision as amended.

[3] The plaintiff raises a second claim on appeal that the court applied incorrect legal standards when, after dismissing the plaintiff's application, the court additionally stated on the record that the credible evidence presented "did not give rise to granting a restraining order." Because we conclude that the court properly determined that the plaintiff was not eligible for relief, in that she did not fall within the definition of "[f]amily or household member" as set forth in § 46b-38a (2), we decline to address the plaintiff's second claim.

[4] The proper remedy, in the event this court were to agree with the plaintiff's claim on appeal, would be to remand the case for a new hearing on the plaintiff's application, not, as the plaintiff requests, a direction for the trial court to "render judgment for the plaintiff and reinstate the restraining order against the defendant which was originally entered on an ex parte basis."

[5] "'Coercive control' includes, but is not limited to, unreasonably engaging in any of the following:

"(A) Isolating the family or household member from friends, relatives or other sources of support;

"(B) Depriving the family or household member of basic necessities;

"(C) Controlling, regulating or monitoring the family or household member's movements, communications, daily behavior, finances, economic resources or access to services;

"(D) Compelling the family or household member by force, threat or intimidation, including, but not limited to, threats based on actual or suspected immigration status, to (i) engage in conduct from which such family or household member has a right to abstain, or (ii) abstain from conduct that such family or household member has a right to pursue;

"(E) Committing or threatening to commit cruelty to animals that intimidates the family or household member; or

"(F) Forced sex acts, or threats of a sexual nature, including, but not limited to, threatened acts of sexual conduct, threats based on a person's sexuality or threats to release sexual images." General Statutes (Rev. to 2021) § 46b-1 (b), as amended by Public Acts 2021, No. 21-78, § 1.

[6] The plaintiff sets forth these same definitions in her appellate brief and does not propose any alternative definitions.

[7] The plaintiff argues that the term "recently" is ambiguous and, thus, this court should review the legislative history of the statute to ascertain its meaning. Because we conclude that the text of the statute is unambiguous, we do not consider the legislative history. See *Mandable* v. *Planning & Zoning Commission*, 173 Conn. App. 256, 263 n.8, 163 A.3d 69 (2017).

[8] In arguing that the term recently "extends to a period well in excess of two years," the plaintiff cites a decision of our Supreme Court in which the court described cases as having been "recently" decided. We disagree that the court's reference to cases as having been "recently" decided is persuasive evidence of the meaning of the word "recently" in the context of a dating relationship.

[9] Notably, § 53a-40e incorporates the same definition of family or household member as § 46b-15. Section 53a-40e authorizes the court to issue a standing criminal protective order following a defendant's conviction of certain crimes against a family or household member.

[10] The plaintiff points to certain remarks that the trial court made while issuing evidentiary rulings during the hearing and argues that "[t]he record demonstrates that the trial court was conflating an improper imminence requirement with the time period for dating, so that by doing so it resulted in the trial judge [applying] too narrow and strict a consideration of what 'recently' meant in this context." The plaintiff refers to the following colloquy between the court, her counsel, Attorney Alexander Cuda, and the defendant's counsel, Attorney Philip Russell, which concerned an incident that occurred on the school bus in 2019, in support of her argument:

"[The Defendant's Counsel]: I'm going to object at this point, we're talking about an infraction that might [have] occurred in 2019 on a hearing involving imminent threat or stalking.

"The Court: So, Attorney Cuda.

"[The Plaintiff's Counsel]: Your Honor, this, this is not just involv[ing] imminent threat, and in fact, stalking has a very broad definition in terms of a pattern of incidents that can include, you know, going back years, including, you know, more recent incidents. In terms of issues of coercive control, you know, there is a very broad set of circumstances that the court can consider, indeed, and there is not, for either stalking or coercive control issues, the imminence requirement that Attorney Russell is trying to, to add to this.

"The Court: Well, under either scenario, there still needs to be a risk associated with that. There needs to be something for the court to determine that someone's safety is at risk, that there's a need to enter a restraining order against an individual. So, I disagree with your assessment that coercive control or, or stalking doesn't need to also present an imminent risk to the moving party."

In considering the plaintiff's argument, we first note that she does not claim on appeal any error in the evidentiary rulings made by the trial court. Rather, she argues that the court "applied an incorrect standard of 'imminence,' " which, she contends, "improperly influenced the trial court's determination of what 'recently' means."

We disagree that the trial court's remarks regarding "imminence" impacted the trial court's determination as to the recency of the dating relationship. Viewing the record as a whole, it is clear the trial court determined that the plaintiff was not a "[f]amily or household member" because the parties were not "persons . . . who have recently been in, a dating relationship." General Statutes § 46b-38a (2) (F). We are not persuaded by the plaintiff's arguments that the court's determination on that issue was related to, or affected by, any remarks regarding the evidence required to support issuance of a restraining order.

[11] See *S. B-R.* v. *J. D.*, 208 Conn. App. 342, 351, 266 A.3d 148 (2021) (court abused its discretion in issuing order of civil protection where court could not reasonably find that continuing conduct element of § 46b-16a was proven); *C. A.* v. *G. L.*, 201 Conn. App. 734, 746, 243 A.3d 807 (2020) (court did not abuse its discretion in deciding that defendant had stalked plaintiff).

[12] Those other concerns are as follows. The plaintiff contends that "[i]t is inconsistent for a self-represented party to be granted an ex parte restraining order in this case, noting her prior dating relationship, and then be denied a restraining order after a hearing which finds that there was an insufficient dating relationship for application of the statute." She further contends that application of the recent requirement is unfair to teenage victims of domestic violence, who are less likely to fall within the remaining relationship categories set forth in § 46b-38a, because they are far less likely to be married, living with a partner, or having children. Last, she contends that "[t]he only way an applicant would know for sure that the relationship is 'recent' enough is to stay in the relationship as close as possible to applying for the restraining order, because if they dump their abuser and wait then it may not be recent enough for the court."

[13] General Statutes § 46b-16a (a) provides in relevant part: "Any person who has been the victim of sexual abuse, sexual assault or stalking may make an application to the Superior Court for relief under this section, provided such person has not obtained any other court order of protection arising out of such abuse, assault or stalking and does not qualify to seek relief under section 46b-15. . . ."

[14] In her principal brief before this court, the plaintiff states that "[t]he

trial court also erroneously issued an order of dismissal pursuant to Practice Book § 14-3, 'Dismissal for Lack of Diligence' . . . ." Our review of the case detail reveals that the judgment of dismissal notice stated incorrectly that the court dismissed the action for "failure to prosecute said action with reasonable diligence, (P.B. 14-3)." Because we determine that the form of the judgment was improper and remand with direction to render judgment denying the application, we need not discuss this apparent clerical error further.

---